

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEMPSEY BENNETT, | ) | No. 74847-5-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED |
| | ) | |
| Respondent. | ) | FILED: August 1, 2016 |
| | ) | |

Cox, J. — Dempsey Bennett appeals the summary judgment dismissal of this action against the Department of Corrections. He claims causes of action under the Washington Law Against Discrimination and for intentional infliction of emotional distress. There are no genuine issues of material fact, and the Department is entitled to judgment as a matter of law. We affirm.

Bennett, who is African American, has worked for the Department for over 16 years. During this time, he has complained both to the Department and the Equal Employment Opportunity Commission (EEOC) about alleged racial discrimination. He has also unsuccessfully sought promotion within the Department on numerous occasions. And he has been the subject of internal investigations within the Department for alleged misconduct with varying results. The Department often concluded that the allegations against Bennett were

unfounded.  But the Department also formally disciplined him several times based on these investigations.

In July 2007, the EEOC mediated Bennett's then existing claims against the Department.  As part of that mediation, the EEOC agreed not to institute a lawsuit against the Department under federal law.

As part of the mediated settlement, the Department and Bennett entered into an "Additional Agreement."[1]  That agreement provided for Bennett's release of any and all claims against the Department based on the Washington Law Against Discrimination as well as other tort claims.

In January 2014, Bennett commenced this action.  His complaint states claims of unlawful retaliation, hostile work environment, and disparate treatment under the Washington Law Against Discrimination.  His tort claims included both negligent and intentional infliction of emotional distress (outrage).

The Department moved for summary judgment on all of Bennett's claims. Bennett conceded that his claim for negligent infliction of emotional distress should be dismissed, but opposed summary judgment on the remaining claims. The trial court granted the motion, dismissing all claims.

Bennett appeals.

## SETTLEMENT AND STATUTE OF LIMITATIONS

The threshold question before us is the proper scope of our inquiry for potentially viable claims in our review of the summary judgment of dismissal.

---

[1] Clerk's Papers at 149.

Only then can we properly determine whether Bennett has met his burden to show the existence of any genuine issue of material fact for trial.

We answer this question based on two undisputed facts. First, Bennett agreed to release any and all claims, known or unknown, against the Department in July 2007. Specifically, the agreement states in relevant part as follows:

> DEMPSEY BENNETT . . . agree[s] to release the State of Washington, D[epartment of Corrections] . . . from any and all claims, causes of actions, suits, civil or otherwise, known or unknown . . . that arise out of or relate to BENNETT's employment with the DOC up to the time this agreement is final [July 11, 2007]. This includes, but is not limited to any and all . . . claims arising under the Washington State Law Against Discrimination . . . and other . . . common law and tort claims.[2]

The plain words of this settlement agreement bar the WLAD and tort claims asserted in this action to the extent they arise from events prior to July 11, 2007, the effective date of this agreement.

Second, the statute of limitations for these WLAD claims and tort claims is three years.[3] Bennett filed this action on January 6, 2014. Accordingly, with one limited exception, the bar date is January 6, 2011. Both the WLAD claims and the tort claims that arise from events prior to this date cannot create a genuine issue of material fact for trial. We address later in this opinion the limited exception we just mentioned.

---

[2] Id.

[3] Washington v. Boeing Co., 105 Wn. App. 1, 7-8, 19 P.3d 1041 (2000); RCW 4.16.080.

3

## WASHINGTON LAW AGAINST DISCRIMINATION

Bennett argues that the court erred by dismissing his WLAD claims on summary judgment. We disagree.

We review de novo the grant of summary judgment.[4] This court affirms summary judgment if "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[5] When reviewing a summary judgment decision, we look at the facts in the light most favorable to the non-moving party.[6]

Courts rarely grant summary judgment in discrimination cases.[7] This is because evidence in these cases "'generally contain[s] reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury.'"[8] Additionally, "because of the difficulty of proving a discriminatory motivation," summary judgment in favor of an employer is "seldom appropriate."[9]

---

[4] Camicia v. Howard S. Wright Const. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014).

[5] Id.

[6] Id. at 687-88.

[7] Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014).

[8] Johnson v. Chevron U.S.A., Inc., 159 Wn. App. 18, 27, 244 P.3d 438 (2010) (quoting Davis v. W. One Auto. Grp., 140 Wn. App. 449, 456, 166 P.3d 807 (2007)).

[9] Scrivener, 181 Wn.2d at 445.

Washington prohibits employers from discriminating against employees due to race.[10] Moreover, the WLAD prohibits employers from retaliating against employees for bringing claims of discrimination.[11]

## HOSTILE WORK ENVIRONMENT

Bennett argues that there are genuine issues of material fact for his hostile work environment claim. We disagree.

RCW 49.60.180(3) provides that an employer may not discriminate against any person due to the person's race or color. A hostile work environment is one form of discrimination. To establish a hostile work environment claim, a plaintiff must show that he or she received unwelcome harassment, the harassment was because of membership in a protected class, the harassment affected the terms and conditions of employment, and the harassment can be imputed to the employer.[12]

Harassment is conduct an employee finds offensive.[13] Discriminatory comments, mockery, or insults towards the employee are harassment.[14]

---

[10] RCW 49.60.180.

[11] RCW 49.60.210(1).

[12] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 275, 285 P.3d 854 (2012).

[13] Glasgow v. Georgia-Pac. Corp., 103 Wn.2d 401, 406, 693 P.2d 708 (1985).

[14] See, e.g., Loeffelholz, 175 Wn.2d at 275-76; Antonius v. King County, 153 Wn.2d 256, 259-60, 103 P.3d 729 (2004); Alonso v. Qwest Commc'ns Co., LLC, 178 Wn. App. 734, 747-48, 315 P.3d 610 (2013); W. One Auto. Grp., 140 Wn. App. at 457-58.

5

Subjective offense to facially innocuous comments is not sufficient to prevent dismissal on summary judgment.[15]

"To determine whether conduct was severe or pervasive enough to affect the terms and conditions of employment, we look at the totality of the circumstances, including the frequency and severity of harassing conduct, whether it was physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interfered with the employee's work performance."[16] Conduct that is merely offensive is insufficient to affect the terms and conditions of employment.[17]

"Casual, isolated or trivial manifestations of a discriminatory environment" also do not affect the terms or conditions of employment sufficiently to violate the law.[18] For example, in Davis v. Fred's Appliance, Inc., a manager referred an employee as "'Big Gay Al'" three times in one week.[19] Division Three of this court affirmed summary judgment for the employer, determining that although these comments were offensive and "highly inappropriate," they were isolated and casual, thus they did not affect the terms and conditions of employment.[20]

---

[15] See Crownover v. Dep't of Transp., 165 Wn. App. 131, 144-45, 265 P.3d 971 (2011).

[16] Davis v. Fred's Appliance, Inc., 171 Wn. App. 348, 362, 287 P.3d 51 (2012).

[17] Crownover, 165 Wn. App. at 145.

[18] Glasgow, 103 Wn.2d at 406.

[19] 171 Wn. App. 348, 362, 287 P.3d 51 (2012).

[20] Id.

In his declaration opposing summary judgment, Bennett identifies several instances supporting his hostile work environment claim.

The declaration states that on June 23, 2012, another correctional officer allegedly refused to hold open for Bennett an exit gate from the Department's facility. That officer stated that he was the "Grand Poohbah." Bennett took this statement to mean "a high ranking member of the KKK."

The declaration further states that about the same time and date, a separate correctional officer allegedly stated that "People need to understand, [the Department] is for white people[,] they are the ones to run this organization."

A separate incident was the subject of deposition testimony by one of Bennett's coworkers. According to that testimony, a correctional officer asked Bennett if he "wanted chicken. Or [stated that] black people like chicken."[21]

We assume, considering the evidence in the light most favorable to Bennett, that the other correctional officer's reference to "Grand Poohbah" is racially offense, as Bennett asserts. Doing so, as we must for summary judgment purposes, we conclude that all these references are racially offensive, as Bennett testifies in his declaration.

But mere offensiveness does not create a hostile work environment.[22] Here, looking at the totality of the circumstances, Bennett fails to establish that these three instances were so severe and so pervasive as to affect the terms and

---

[21] Clerk's Papers at 269.

[22] Crownover, 165 Wn. App. at 145.

conditions of his employment. Thus, there is no genuine issue of material fact as to this essential element of his claim.

Bennett argues that the numerous investigations of him constitute harassment. He argues that he was investigated for trivial or non-existent grounds because of his race. But the essence of this argument is that he was subject to disparate treatment because of his race. Accordingly, these investigations do not support his hostile work environment claim.

He argues that this court should recognize that "disparate treatment also can contribute to the presence of a hostile work environment." But he does not cite any authority to support this proposition. Thus, we reject this unsupported argument and do not further address it.

*Imputation*

Bennett also fails to establish that this harassment is imputable to the Department. This is an independent basis to reject his hostile work environment claim.

There are two ways to impute harassment to an employer.[23] First, a manager or owner may personally participate in the harassment.[24] If the harasser is not in management, the harassment is imputable only if "the employer (1) authorized, knew, or should have known of the harassment and (2) failed to take reasonably prompt and adequate corrective action."[25]

---

[23] Washington, 105 Wn. App. at 11.

[24] Id.

[25] Id.

Here, there is nothing in Bennett's declaration that evidences that the alleged harassers in the incidents described earlier were managers. Further, there is no evidence in his declaration showing that the Department knew about the incident involving the fried chicken comment and failed to investigate it.

Further, the record shows that the Department investigated the incidents at the gate involving the "Grand Poohbah" statement and the statement that "white people" run the Department once it learned of them. Thus, Bennett fails to show that the Department failed to take reasonably prompt action once it learned of the incidents.

For all these reasons, he fails to show there is any genuine issue of material fact for trial. There is no imputation to the Department and no severe and pervasive activity to create a genuine issue of material fact for trial. The Department was entitled to judgment as a matter of law.

Bennett's declaration in opposition to the motion for summary judgment does refer to an incident involving correctional officers role playing as members of the KKK and Arian Nation. At the time, another correctional officer made comments to Bennett that he viewed as racially offensive. But this incident preceded both the July 2007 settlement of all claims and the January 2011 bar date of the statute of limitations. Accordingly, the incident does not create any genuine issue of material fact for trial.

## DISPARATE TREATMENT

Bennett argues that the trial court erroneously dismissed his disparate treatment claim. We disagree.

9

Under the WLAD, disparate treatment occurs when employers treat certain employees "less favorably" than others because of race, color, or other protected status.[26]

To survive summary judgment, the claimant must show that a reasonable jury could find that the claimant's "protected trait was a substantial factor motivating the employer's adverse actions."[27] The plaintiff bears this burden of production and may use direct or circumstantial evidence.[28] Bennett argues that he established disparate treatment through both indirect and direct evidence. We address each contention in turn.

### Indirect Evidence

Bennett argues that he established, by indirect evidence, a disparate treatment claim that survives summary judgment. We disagree.

When plaintiffs use indirect evidence to establish disparate treatment, we analyze summary judgment motions under a burden-shifting framework.[29] This framework was first articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green.[30]

---

[26] Alonso, 178 Wn. App. at 743.

[27] Scrivener, 181 Wn.2d at 445.

[28] Id.

[29] Id.

[30] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under this framework, the plaintiff must initially establish a prima facie case of discrimination to survive summary judgment.[31] If the plaintiff establishes a prima facie case, then the defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[32] If the employer meets this burden, the plaintiff must then produce sufficient evidence showing that the employer's nondiscriminatory reason is a pretext.[33] "Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose."[34]

Under the McDonnell Douglas framework, a prima facie case requires showing that (1) the plaintiff belongs to a protected class; (2) had been doing satisfactory work; (3) was subject to an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably.[35]

---

[31] Scrivener, 181 Wn.2d at 446.

[32] Id.

[33] Id.

[34] Id.

[35] Milligan v. Thompson, 110 Wn. App. 628, 636, 42 P.3d 418 (2002); Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1123 (9th Cir. 2009).

Here, the fourth element is at issue.

At oral argument, Bennett identified five adverse employment actions that occurred within the statute of limitations:

A denial of a promotion to a position at Cedar Creek Correctional Center in September 2011;

A denial of a promotion to a Corrections Specialist position in October 2011;

A denial of a promotion in August 2012;

A denial of a promotion to acting sergeant in April 2013;

And an investigation into Bennett's use of profanity towards an inmate that resulted in a letter of reprimand being placed in his file.

But for most of these instances, Bennett fails to establish that similarly situated individuals outside the protected class were treated more favorably. Bennett claims four denials of promotional opportunities as adverse employment actions. But for only one opportunity—the opportunity at Cedar Creek—does he establish that the Department hired someone outside the protected class. Thus, for the remaining three adverse actions, Bennett fails to establish a critical part of a prima facie case.

Additionally, Bennett does establish a prima facie case for his other alleged adverse employment action. He testified by declaration that the Department does not discipline or investigate Caucasian officers for using profanity when addressing inmates.

Thus, Bennett established a prima facie case of discrimination for two instances: his denial of a promotion at Cedar Creek, and his investigation and discipline for using profanity to address an inmate.

But the Department articulated nondiscriminatory reasons for both of these adverse actions.

The person hired for the position at Cedar Creek received the highest scores during the interview process. And her scores were considerably higher than Bennett's.

The Department also articulated a nondiscriminatory reason for Bennett's investigation for using profanity. Bennett was investigated after an inmate filed a complaint under the Prison Rape Elimination Act. The Department's superintendent explained that this triggered a mandatory investigation into alleged sexual misconduct.

Accordingly, the Department articulated non-discriminatory reasons for failing to promote Bennett and investigating and disciplining him for addressing an inmate with profanity.

*Pretext*

Bennett argues that he established that the Department's articulated reasons for the adverse actions were pretexts. We disagree.

"An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer."[36]

---

[36] Scrivener, 181 Wn.2d at 446-47.

One way a plaintiff may satisfy this element is by demonstrating that the employer's reasons were "not a motivating factor in employment decisions for other employees in the same circumstances."[37]

Here, Bennett failed to offer any evidence that the Department's reasons were pretexts or that discrimination was nevertheless a substantial motivating factor. Bennett does not dispute that the candidate hired for the position at Cedar Creek received higher interview scores, and does not allege that the interview process was a pretext for discrimination.

Similarly, Bennett offered no evidence indicating that the Department's decision to investigate him for addressing an inmate with profane language was a pretext. Bennett does not dispute that an allegation under the Prison Rape Elimination Act requires a mandatory investigation. And while he testified by declaration that Caucasian officers used profanity without being investigated, nothing in the record indicates that these officers were the subject of alleged violations of the Prison Rape Elimination Act. Accordingly, these other officers were not in the same circumstances as Bennett.

Thus, Bennett failed to create a genuine issue of material fact that the Department's articulated reasons were a pretext. Accordingly, he failed to establish a disparate treatment claim under the McDonnell Douglas burden-shifting test.

---

[37] Id. at 447-48.

*Direct Evidence*

Bennett also argues that direct evidence supports his disparate treatment claim. We disagree.

If an employee uses direct evidence, he or she must show that the employer "acted with a "discriminatory motive" and that the discriminatory motivation was a 'significant or substantial factor in an employment decision.'"[38] Direct evidence proves discriminatory animus without inference or presumption.[39] An employer's discriminatory remarks are direct evidence of discrimination.[40]

When an employer's statements do not directly concern the plaintiff, some inference is necessary to establish discrimination against the plaintiff.[41] But "when evidence establishes the employer's animus toward the class to which the plaintiff belongs, the inference to the fact of discrimination against the plaintiff is sufficiently small that we have treated the evidence as direct."[42]

But there must be some connection between the discriminatory motive and the employment decision.[43] The discriminatory motive must be "a significant

---

[38] Kastanis v. Educ. Employees Credit Union, 122 Wn.2d 483, 491, 865 P.2d 507, 859 P.2d 26 (1994) (quoting Buckley v. Hospital Corp. of Am., Inc., 758 F.2d 1525, 1530 (11th Cir. 1985)).

[39] Rashdan v. Geissberger, 764 F.3d 1179, 1183 (9th Cir. 2014).

[40] Alonso, 178 Wn. App. at 744.

[41] Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090, 1095 n.6 (9th Cir. 2005).

[42] Id.

[43] Alonso, 178 Wn. App. at 746.

or substantial factor in an employment decision."[44] A reasonable factfinder can determine that discriminatory motive affected an employment decision where "the person who exhibited discriminatory animus influenced or participated in the decisionmaking process."[45] Thus, courts must determine whether a reasonable jury could find that the employee exhibiting discriminatory animus was in a position to influence the employment decision.[46]

Here, Bennett failed to establish direct evidence of disparate treatment. Bennett offered some evidence of racial animus. The two instances described earlier—the statement that "[p]eople need to understand, [the Department] is for white people[,] they are the ones to run this organization" and the "'fried chicken' joke"—are direct evidence of animus.

But Bennett fails to allege any connection between this animus and any employment decision. Nothing in the record indicates that the employees who exhibited racial animus influenced or participated in any decision-making process regarding Bennett's employment. In some instances, direct evidence of influence on the decision making process is unnecessary if the employee exhibiting the animus is sufficiently high-ranking "to shape the attitudes, policies, and

---

[44] Id.

[45] Dominguez-Curry v. Nevada Transportation Dep't, 424 F.3d 1027, 1039-40 (9th Cir. 2005).

[46] Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998).

decisions" of the decision-maker.[47] But in this case, the employees exhibiting the animus were Bennett's coworkers, not supervisors or members of management.

Thus, the trial court properly granted summary judgment to the Department on Bennett's disparate treatment claim.

## RETALIATION

Bennett argues that there is a genuine issue of material fact for trial regarding his retaliation claim. We again disagree.

RCW 49.60.210(1) prohibits discriminating against an employee "because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under [the WLAD]." The McDonnell Douglas framework also applies to retaliation claims.[48] To establish a prima facie case for retaliation, and employee must show "that (1) he engaged in statutorily protected opposition activity, (2) the employer took adverse employment action, and (3) the employer took adverse employment action because of the opposition activity."[49]

"[C]lose proximity in time between the protected activity and the employment action" can support a retaliatory motive.[50]

---

[47] Id. at 355.

[48] See Hollenback v. Shriners Hosps. for Children, 149 Wn. App. 810, 823, 206 P.3d 337 (2009).

[49] Fred's Appliance, Inc., 171 Wn. App. at 364.

[50] Hollenback, 149 Wn. App. at 823.

17

On appeal, Bennett appears to argue that his "repeated EEOC complaints, Internal Discrimination Complaints Directed to the DOC" and "memos complaining [about] discrimination" constitute protected activities.[51] He does not specifically cite to anything in his declaration opposing summary judgment, or elsewhere in the record, to support this claim. But he appears to argue that the Department took adverse employment action.

Here, Bennett failed to establish a prima facie case. Bennett engaged in protected activity because he filed several EEOC charges alleging discrimination. And as described earlier, Bennett suffered adverse employment actions.

The problem is that he fails to point to any specific facts to create a genuine issue of material fact whether the Department took these actions because of his protected activity. Absent such a showing of causation, his claim fails.

He argues that the proximity in time between his protected activities and the adverse actions is sufficient. But his only argument consists of pointing out the multiple instances of protected activities and multiple adverse actions during his employment. This is insufficient under the law.

Bennett relies on Hollenback v. Shriners Hospitals for Children[52] to argue that the temporal connection creates an inference of retaliation. There, the employee's performance was "excellent," yet the employer discharged her less

---

[51] Appellant's Opening Brief at 43.

[52] 149 Wn. App. 810, 206 P.3d 337 (2009).

than two months after she complained of harassment.[53] This was sufficient to create an inference that she was discharged as retaliation.[54]

Here, the temporal connection is insufficient to create an inference of retaliation. As Bennett states, he was "continuously under investigation [and] disciplined for trivial matters." During this same period, he also engaged in protected activity. But he presents no analysis linking the two. For instance, he does not show that the adverse actions were more common soon after he filed EEOC complaints. He also fails to draw any other connection between the two. Under the facts of this case, the fact that both the protected activity and the adverse actions occurred over the same time period is insufficient to create an inference of retaliation. Accordingly, Bennett fails to establish a prima facie case of retaliation. There is no genuine issue of material fact for trial.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OUTRAGE)

Bennett also argues that the trial court erroneously dismissed his claim for intentional infliction of emotional distress. We disagree.

Intentional infliction of emotional distress, also known as the tort of outrage, has three elements: the plaintiff must show "'(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress.'"[55]

---

[53] Id. at 823.

[54] See id. at 823-25.

[55] Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn.2d 233, 242, 35 P.3d 1158 (2001) (internal quotation marks omitted) (quoting Birklid v. Boeing Co., 127 Wn.2d 853, 867, 904 P.2d 278 (1995)).

19

As these elements make clear, this tort requires proof of actual emotional distress. It is insufficient that the outrageous conduct could have caused emotional distress—it must actually result in emotional distress.

Here, Bennett fails to meet this third element. Bennett's declaration does not allege that he suffered any emotional distress. Further, Bennett's brief fails to argue that he suffered emotional distress or cite to the record to support such a proposition. And nothing else in the record indicates that Bennett actually suffered severe emotional distress. Accordingly, absent a showing of this element, there can be no genuine issue of material fact for trial. Thus, the court properly dismissed this claim on summary judgment.

We affirm the trial court's summary judgment dismissal of Bennett's hostile work environment, disparate treatment, retaliation, and intentional infliction of emotional distress claims.

_Cox, J._

WE CONCUR:

_Spearman, J._          _Leach, J._

20