[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13326
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00702-KS-DAB


SUCCESS JUMBO,
SAVIOR B. SAMUEL,
BRIAN BAKE,
AMIYENKUMO EMMANUEL,
RUTH OFUA,
ROSELINE ATUIN,
KEHINDE BATIFE,
JEFFREY OGBUDU,
IDOWU IJANBOH,
TAMARRAUBIBIBOGHA GUNUBOH,
EMMANUEL OPOKUMA,
DEMIAN UDAKA,
MATHIAS MUMBOH,
PHILIP MEZEH,
OBO SAKA,
THANKGOD HAROLD,
JAMES OGONIBA,
APIRI OBANABA,
STANLEY CHUKWUEMEKA,
VICTOR DIAMOND,
JIMMY IWEZU,
FAITH DOUTIMIWEI,
PROMISE OWEI,
MANFRED PEPPLE,

DIFFA PREKEBINA,
EMMANUEL AZIBAKANYE,
DAUBOTEI UGOWONNI,
KELVIN AKONO,
DANIEL HAROLD,
IFEOMA OKORO,
OLUWABUKOLA JAYEOLA,
JUSTINA AMUSO,
VICTORIA NWIDUM,
LOLIA SOBEREKON,
TARIERE OKUBA,
GODSGIFT MOSES,
ALL PLAINTIFFS,

                                        Plaintiffs-Appellants,

versus

ALABAMA STATE UNIVERSITY,
FEDERAL REPUBLIC OF NIGERIA,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 30, 2019)

Before, ED CARNES, Chief Judge, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

    A number of Nigerian students filed a complaint against Alabama State

University contending that it improperly withheld scholarship funds that the

2

Federal Republic of Nigeria provided for them.  The district court granted summary judgment to the university.  This is the students' appeal.

## I.

In April 2013 two university representatives, Stephen Havron and David Iyegha, went to Nigeria to discuss the admission of Nigerian scholarship students. Iyegha testified that they reached an oral agreement that the students would be "treated as out-of-state students" and that "all charges would be set accordingly." The following month Nigeria sent a letter to the university confirming that it was "providing full scholarship[s] (covering tuition fees, books, supplies, insurance, room/boards, living expenses, and other incidentals)" for the students.

After thirty-four Nigerian students matriculated, Nigeria wired scholarship funds directly to the university, which placed the funds in a deferred revenue account.  The university then established individual accounts for each student.  It transferred funds from the deferred revenue account to individual student accounts as each student registered for classes, purchased books, signed up for housing, and incurred other expenses.  University officials testified that these students were not charged an amount for each of these expenses different from the amount that would be charged to other non-Nigerian students.

In April 2015 Iyegha wrote a letter to university president Gwendolyn Boyd highlighting several concerns that the Nigerian students had raised.  These

concerns included the students being charged for meal plans they did not want, forced to buy high-cost books through the campus bookstore, and being charged for staying in dormitories during the semester and over breaks regardless of whether they were actually residing in the dormitories during those times. Iyegha also noted that funds left over in students' individual accounts at the end of the year had not been refunded to them, but had instead been used to defray the cost of outstanding payments Nigeria still owed the university.

In May 2015, after Boyd had failed to satisfy the students' concerns, they sent a letter to Nigerian officials. Shortly after, Nigeria sent a letter to Boyd asking that "1. All credit balances for Tuition be carried over for each student and be used as [an] initial deposit for the next semester['s] fees. 2. All credits/balances on all other line items should be refunded to each student." Provost Leon Wilson testified that at the time this letter was sent there were no funds to carry over to the next semester or to refund to students because Nigeria was late in paying the scholarship funds to the university. He also testified that he reached out to Nigerian officials in an attempt to discuss the matter after receiving the letter, but did not hear back. Nigerian officials eventually resolved the late payment, but did not address the students' complaints again.

4

In May 2016, after Nigerian students had filed a lawsuit demanding reimbursement of scholarship funds,[1] Wilson wrote another letter to Nigerian officials. He received a response asking him for an accounting of how much credit Nigeria had on balance with the university and instructing him to "hold[] on to the funds until Instructions are given on the process of refunds." In July 2016 a Nigerian delegation visited the university to resolve the matter. They agreed that moving forward the university would collect only tuition and related fees from Nigeria and other scholarship funds would be paid directly to students. The university then disbursed scholarship funds that it received from Nigeria in 2016 to the students, except for funds related to tuition. Nigeria still had a credit of $201,358.90 after this distribution, and Wilson wrote a letter asking for instructions on how to refund the residual funds to Nigeria. Nigerian officials instructed Wilson to "suspend the process of remitting the residual funds . . . pending the determination of the actual amount outstanding with your institution."

In August 2016 Nigerian students filed the present complaint against the university seeking the refund of certain scholarship funds that the university received from Nigeria from 2013 to 2015. The students brought various state law claims and a claim of national origin discrimination under Title VI of the Civil Rights Act of 1964. The university interpleaded the residual funds and remitted

---

[1] This earlier suit was dismissed on jurisdictional grounds and is not at issue in this appeal.

them to the district court in September 2017.  In July 2018 the district court granted summary judgment to the university.  The university told the court that the residual funds in the court registry belonged to Nigeria, but after Nigeria failed to advise the court about how to distribute the funds they were remitted back to the university.  Nigerian students then filed two successive motions to alter, vacate, or amend the district court's judgment, which were both denied.  The students now appeal, contending that the district court erred in granting summary judgment to the university on their Title VI claim by applying the incorrect legal standard and by failing to give appropriate weight to evidence of discrimination presented by the students.

## II.

The Nigerian students first contend that the district court erred in evaluating their Title VI claim under the McDonnell Douglas framework rather than a deliberate indifference standard.  We note that several of our sister circuits have applied the McDonnell Douglas framework to Title VI claims.  See e.g., Rashdan v. Geissberger, 764 F.3d 1179, 1182 (9th Cir. 2014) ("We now join the other circuits in concluding that McDonnell Douglas also applies to Title VI disparate treatment claims."); Fuller v. Rayburn, 161 F.3d 516, 518 (8th Cir. 1998) (analyzing a Title VI claim under McDonnell Douglas' burden shifting framework); Hankins v. Temple Univ. (Health Scis. Ctr.), 829 F.2d 437, 440 (3d

Cir. 1987) (applying <u>McDonnell Douglas</u> to both Title VI and Title VII claims "[b]ecause of the difficulty in acquiring direct evidence of . . . motivation in most cases."). And in any case, the Nigerian students have waived this argument because they raised it for the first time on appeal and never objected to the application of <u>McDonnell Douglas</u> in the district court despite ample opportunity to do so. <u>See</u> <u>Access Now, Inc. v. Sw. Airlines Co.</u>, 385 F.3d 1324, 1331 (11th Cir. 2004) (noting that we have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court") (quotation marks omitted).

## III.

The students also contend that the district court erred in excluding evidence, apparently referring to the court's statement in its summary judgment order that characterized affidavits submitted by Nigerian students as "subjective beliefs."[2]

We review <u>de novo</u> a district court's decision to grant summary judgment, drawing "all reasonable inferences in the light most favorable to the non-moving party." <u>Owen v. I.C. Sys., Inc.</u>, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary

---

[2] Both parties incorrectly assert that the district court made an evidentiary ruling and that we should review it for abuse of discretion. This appears to be based on the court's characterization of affidavits as expressions of "subjective beliefs." But the district court did not hold that these affidavits were inadmissible. It merely found that they were insufficient to present a genuine issue of material fact for trial. So the <u>de novo</u> standard for reviewing a grant of summary judgment applies.

judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986) (quotation marks omitted).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S. Ct. at 2510.

We evaluate the students' Title VI claim under the McDonnell Douglas framework, because the students did not object to its application in the district court.  Under that framework a plaintiff must first make out a prima facie case of discrimination.  Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984).  If a plaintiff successfully sets out a prima facie case, the burden shifts to the defendant to articulate "one or more legitimate non-discriminatory reasons for its action.  If it does so, the burden shifts back to the plaintiff to produce evidence that the . . . proffered reasons are a pretext for discrimination." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010) (citation omitted).

To show pretext a plaintiff must demonstrate "both that the reason was false, and that discrimination was the real reason" motivating the action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993).  So long as a defendant does not act because of a discriminatory reason, relief will not be

8

granted solely because a decision was made "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all." Id. (quotation marks omitted).

The Nigerian students contend that the district court erred in ruling that they could not make out a prima facie case of discrimination. They argue that the court's finding that the only evidence that they were treated differently than similarly situated non-Nigerian students consisted of affidavits containing "subjective beliefs" was reversible error. But our review is de novo, so whether or not the district court erred in its analysis is irrelevant. Our inquiry is focused instead on whether the Nigerian students produced evidence that could allow a reasonable jury to rule in their favor. We conclude that they did not. Even if the students could make out a prima facie case, the university has proffered a nondiscriminatory reason for handling the scholarship funds in the manner that it did and the students have not shown that this was pretext for discrimination.

The university has shown through ample evidence in the record that it tried repeatedly to contact Nigerian officials to discuss how to deal with scholarship funds multiple times before 2016 to no avail. Once the university had the opportunity to discuss the matter with Nigerian officials, it gave the students scholarship funds unrelated to tuition that it had received from Nigeria in 2016 and it stopped collecting such funds moving forward. The only evidence the students

presented that indicates that the university mishandled scholarship funds from 2013 to 2015 are affidavits from the students themselves and from Iyegha.  But even if the facts alleged in those affidavits are true, the students must show more than that the university mishandled funds for "a bad reason, a reason based on erroneous facts, or for no reason at all."  Id. (quotation marks omitted).  To show pretext the students must also show that the university withheld the funds for a discriminatory reason.  They have not, so they have failed to show that there was a genuine issue of material fact for trial.

**AFFIRMED.**