**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3392

_____

NICHOLAS WEIR,

Appellant

v.

UNIVERSITY OF PITTSBURGH; JOHN HORN;
KARA BERNSTEIN; VICE DEAN ANN THOMPSON;
JOHN DOES; JANE DOES

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:21-cv-01206)
District Judge: Honorable Robert J. Colville

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on June 1, 2023

Before: SHWARTZ, BIBAS, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed: June 2, 2023)

_____

PER CURIAM

Pro se appellant Nicholas Weir appeals the District Court's dismissal of his claims against the University of Pittsburgh, Dr. John Horn, Dr. Kara Bernstein, Vice Dean Ann Thompson, and unidentified John and Jane Does. Weir brought federal and state claims relating to his experience as a Ph.D. student and graduate assistant at the University of Pittsburgh. For the reasons that follow, we will affirm the District Court's judgment.

I.

Weir made the following allegations in his second amended complaint.[1] Weir is a Black male who was born in Jamaica and has dark brown skin. At some point prior to October 2019, Weir enrolled in a Ph.D. program at the University of Pittsburgh, where he was the only Black male student in his program. Weir felt that his learning environment began changing in October 2019, when he began to encounter unknown "outsiders (government agencies including US military, CIA, and the FBI, and their agents)" who engaged in a campaign of "coordinated harassment and stalking" against him whenever he was on campus. Second Am. Compl. ¶7. He also experienced "coordinated, disparaging, and widespread ill-treatments from students and employees of the University." Id. ¶1. These

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because we write primarily for the parties, we recite only the facts necessary for this discussion.

experiences mimicked those "he been through before where his employer was bribed millions of dollars to ferment a toxic work environment." Id. ¶6. When Weir discussed his concerns with counselors at the campus counseling center, they encouraged him to speak to the police although he told them he had previously sought their help without success.

Weir was placed on academic probation in December 2019. He sought review of certain exam questions by the director of his program, Dr. Horn, but Dr. Horn never conducted the review. Weir was later "coerced" to meet with a psychiatrist, who labeled him as "psychotic with literally no basis." Id. ¶10. One of Weir's professors sent an email reflecting "animosity" toward him in April 2020. Id. ¶13. Weir was advised late about the steps he needed to take to join a lab for the fall of 2020, while a Caucasian student was timely advised. However, both Weir and the other student timely joined a lab. The professor directing the lab terminated Weir's lab position a few weeks later.

In September 2020, a dean gave Weir the option to retake a prior course or take a one-year leave of absence, and gave him a scholarship so he could retake the course and find a new lab. A different professor initially permitted Weir to join his lab but "suddenly changed his demeanor" so Weir was not able to participate in the lab. Id. ¶18.

In December 2020, Weir received a program letter from Dr. Horn, stating that none of Weir's mentors from his first three lab rotations from the prior year concluded that he was qualified to conduct dissertation research in their programs. He was dismissed from his program and notified that he was not eligible for reinstatement.

In the spring of 2021, Weir attended three courses in which he had enrolled before he was terminated from his program. His institutional email account was suspended in

3

March 2021, after he was warned that it would expire. In April 2021, Weir was advised that he was not permitted on University property and could not continue to communicate with University faculty and staff. Between 2020 and 2021, Weir told various University officials about his belief that he was experiencing harassment and bias.

In August 2020, Weir filed an action in the Court of Common Pleas of Allegheny County against the University of Pittsburgh, seeking declaratory and injunctive relief to reinstate his graduate position. That action remains pending, as it appears that Weir never responded to a February 2021 court order.[2]

Weir initiated the underlying case in the District Court in September 2021. The District Court dismissed Weir's amended complaint on defendants' motion; several of Weir's claims were dismissed with prejudice, but the majority were dismissed without prejudice and with leave to amend.[3] After Weir filed a second amended complaint, defendants again moved to dismiss and the District Court dismissed Weir's claims with prejudice, adopting a Magistrate Judge's report and recommendation. The District Court denied leave to amend as futile. Weir timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise

---

[2] Weir attempted to remove this case to federal court; the case was remanded back to state court.

[3] Weir's appellate brief does not discuss the claims that were dismissed with prejudice in the District Court's first dismissal order. Accordingly, he has forfeited review of those issues. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (explaining that any issue an appellant fails to develop in an opening brief is forfeited).

plenary review over the District Court's dismissal of Weir's claims. See Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). In our review, "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citation omitted). Dismissal is appropriate "if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility." Id. Additionally, we review the District Court's decision to deny Weir leave to amend his complaint for abuse of discretion. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

### III.

We agree with the District Court's dismissal of Weir's claims. Weir raised 32 claims in his second amended complaint. First, he alleged federal racial discrimination and retaliation claims under Titles VI and VII of the Civil Rights Act and 42 U.S.C. § 1981. To state a prima facie case of disparate treatment under Title VII, a plaintiff must allege four elements, the last of which is that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination, such as where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Rashdan v. Geissberger, 764 F.3d 1179, 1182 (9th Cir. 2014) (adopting the McDonnell Douglas framework for Title VII disparate treatment claims to Title VI disparate treatment claims and collecting cases doing the

5

same); see also Castleberry v. STI Grp., 863 F.3d 259, 266 (3d Cir. 2017) (stating that a plaintiff seeking relief under § 1981 must allege "an intent to discriminate on the basis of race by the defendant[s]," among other elements).

Weir did not plead factual allegations suggesting that any of the alleged actions taken against him were taken under circumstances giving rise to an inference of discrimination.[4] Weir's complaint identified one student who he believes was treated better than him by the University. However, Weir alleged that both he and the other student were able to timely enroll in a lab, and Weir's position was terminated when it was determined that he was unqualified to continue. Weir did not allege that he was qualified to continue in his program, and without additional information about the other student, he cannot serve as a comparator for Weir.[5] See Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002) (explaining that to be similarly situated, a comparator must be someone "directly comparable to [the plaintiff] in all material respects").

Next, Weir did not plead allegations to support his discrimination claims under a hostile work environment theory, as he did not present factual allegations that could show that his university environment was "permeated with *discriminatory* intimidation, ridicule,

---

[4] To the extent that Weir attempted to sue individual University employees under Title VII, "individual employees are not liable under Title VII." See Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) (per curiam).

[5] For these same reasons, Weir could not state a claim of equal protection under the Fourteenth Amendment based on his allegations about this other student. See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.") (citation omitted).

6

and insult." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (emphasis added) (analyzing a hostile work environment claim in the Title VII context). Weir made vague references to bias, discriminatory treatment, and harassment he experienced in nearly every paragraph of his second amended complaint, but he did not cite any specific examples of this alleged discriminatory treatment.

Further, Weir did not provide factual allegations of retaliation. A plaintiff must allege three elements to bring a claim of Title VII retaliation, the first of which is that he "engaged in activity protected by Title VII." See Moore v. City of Philadelphia, 461 F.3d 331, 340 (3d Cir. 2006) (citation omitted). As relevant here, protected activity includes "informal protests of discriminatory employment practices, including making complaints to management." See id. at 343 (internal quotation marks and citation omitted). Weir alleged that he repeatedly made reports to his superiors about his treatment at the University, but he made no factual allegations of how that treatment was discriminatory.[6] See Barber v. CSX Distribution Servs., 68 F.3d 694, 701 (3d Cir. 1995) (explaining that a general "complain[t] about unfair treatment" does not constitute protected activity for purposes of a claim of discriminatory retaliation).

---

[6] Because Weir cannot state a federal claim of discrimination or retaliation, his parallel discrimination and retaliation claims under the Pennsylvania Human Relations Act ("PHRA") and the Pennsylvania Fair Educational Opportunities Act ("PFEOA") were properly dismissed. "Claims under the PHRA are interpreted coextensively with Title VII claims," see Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006), and no party disputes that McDonnell Douglas provides the appropriate framework for Weir's PFEOA claims.

Weir also brought claims of conspiracy under 42 U.S.C. §§ 1983, 1985, and 1986. Although Weir's complaint is full of conclusory statements that a conspiracy existed to stalk, intimidate, and harass him, it did not include factual allegations to support his belief that his professors and members of the University administration somehow conspired with unidentified "outsiders" to derail his academic experience. See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178-79 (3d Cir. 2010) (holding that a § 1983 conspiracy claimant must assert facts from which a conspiratorial agreement can be inferred and that conclusory allegations are not sufficient); Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."); Rode v. Dellarciprete, 845 F.2d 1195, 1206 (3d Cir. 1988) (stating the elements of a § 1985(2) claim regarding a conspiracy to obstruct justice by intimidating parties, witnesses, or jurors); see also Clark v. Clabaugh, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994) ("[T]o maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy.").

Weir's remaining state law claims were all properly dismissed. For Weir's negligence claim, he did not present factual allegations to suggest that any defendant breached "a legally recognized duty or obligation that is causally connected to the damages [he] suffered." See Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 280

8

(Pa. 2005). Weir similarly made no factual allegations to support claims of negligent hiring, retention, training, supervision, or entrustment.

Weir also alleged that defendants intentionally interfered with three contractual relationships involving the University, but Weir did not allege a contractual relationship with a third party and did not include allegations about "purposeful action on the part of [any] defendant, specifically intended to harm" those contractual relationships. See Crivelli v. Gen. Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000). Weir also could not state a defamation claim against any defendant, as he did not allege publication of a defamatory statement against him. See 42 Pa. Cons. Stat. § 8343(a). Finally, Weir did not allege any "extreme and outrageous conduct" on the part of any defendant to state a claim of intentional infliction of emotional distress, see Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998), and did not identify "immediate and substantial physical harm" he suffered to state a claim for negligent infliction of emotional distress, see Doe v. Phila. Cmty. Health Alternatives AIDS Task Force, 745 A.2d 25, 28 (Pa. Super. Ct. 2000), aff'd, 767 A.2d 548 (Pa. 2001).

In this case, granting Weir further leave to amend would have been futile. See Grayson, 293 F.3d at 108. Weir had three opportunities to clarify his allegations and does not argue that he could offer additional factual allegations to overcome the hurdles to relief discussed above.[7] If Weir "had knowledge of facts that would cure the defects in [his]

---

[7] Weir also argues that the District Court erred in denying his request for a temporary restraining order early in the litigation, but he does not specifically challenge the District Court's conclusions that he failed to show a likelihood of success on the merits or irreparable harm if relief was not granted. See Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000). Weir similarly does not identify issues with other decisions made by the District Court prior to dismissal. Weir's request for the case to be reassigned to a

9

complaint, [he] should have asserted them before now." See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir. 2007).

Accordingly, we will affirm the judgment of the District Court.

different District Judge on remand is denied as moot.