# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 46400-4-II |
| Appellant, | |
| v. | |
| THE EVERGREEN STATE COLLEGE BOARD OF TRUSTEES; THE EVERGREEN STATE COLLEGE; STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. —Arthur West appeals two orders granting partial summary judgment to the Evergreen State College, the Evergreen State College Board of Trustees, and the State of Washington (collectively the College). We conclude that the trial court properly granted summary judgment. We further conclude that the trial court did not err when it permitted the College to file a specific declaration. Therefore, we affirm the trial court.

## FACTS

This case arises out of a suit West filed on May 8, 2012, asserting several claims, including a violation of the Public Records Act (PRA)[1] and false arrest or unlawful seizure.[2] West filed

---

[1] Ch. 42.56 RCW.

[2] West also asserted claims of fraud, negligence, malicious prosecution, defamation, and false light, and sought a declaratory judgment. West does not appeal the dismissal of these claims.

several PRA requests with Evergreen State College (Evergreen) on March 4, 2010, May 17, 2010, and March 16, 2012.[3]

I.       PRA REQUESTS

On May 14, 2010, West went to Evergreen to review and collect documents from his first PRA request.  After some time, the public records officer, Patricia "Patte" King, reported to John Hurley, the Vice President for Finance and Administration at Evergreen, that West was "being abusive towards her."  Clerk's Papers (CP) at 51.  Hurley had the police called.  According to King, she asked West "three or four times to sit out in front until [she] was able to finish with his request."  CP at 54.  Ed Sorger, the Chief of Police for Evergreen, and Officer Dwight Monohon spoke with West.  During that time, King completed preparation of the documents, and Sorger determined the situation did not warrant further action.

According to Sorger, West "appeared to calm down once Police Services became involved and did not present any concerns that warranted issuance of a trespass warning."  CP at 114.  In a declaration later filed with the trial court for partial summary judgment, Sorger stated, "Monohon and I then asked [West] to leave the area.  [West] requested that he be trespassed from the College. I advised him that we would not do so.  He seemed disappointed and voluntarily left the area."  CP at 114.  Sorger and Monohon also stated that West did not ask them if he was "free to leave" and Evergreen did not take further action.  CP at 114, 117.

Monohon also executed a declaration for the partial summary judgment motion and stated that he arrived and asked West for identification.  West initially refused but "gladly" gave the officer his identification after Monohon said he was investigating a "disturbance and possible trespass."  CP at 117.  Sorger informed Monohon that West did not need to be issued a trespass

---

[3] These dates are the dates Evergreen received West's PRA requests.

warning, and Monohon and Sorger asked West to leave the area. Monohon stated, "West seemed disappointed that we were not going to take further action, but voluntarily left the area on his own without an escort." CP at 117.

On May 17, 2010, West filed a second PRA request. He asked for "A list of all persons presently on the [Evergreen] Criminal Trespass List, and a copy of relevant policies, procedures and statutory authority for each individual case." CP at 232. After being notified that all the records requested were ready to be picked up, West failed to pick up the documents. The request was closed in 2012 due to abandonment.

On March 16, 2012, immediately after receiving notice that his prior request was closed, West requested that he be able to review parts of his May 17, 2010 request and he filed a new third PRA request, asking for "a copy of those persons presently on the 'Trespass List.'" CP at 249. West's renewed second PRA request and new third PRA request were divided into several smaller sections and given numeric identifiers.

Evergreen responded to West's PRA request five business days after receiving the request. It estimated that responsive records would be provided "on or before May 4." CP at 16. On May 8, two business days later, Evergreen sent a letter to West regarding one of his requests numbered 2012-010, and attached the "Trespass Report Listing for The Evergreen State College." CP at 17. The letter referenced exemptions for certain information. It further stated,

> The only way to provide you with information about the individuals who have been trespassed and the offenses they committed would be to provide you with copies of each police incident report listed in the Trespass Report Listing. If you wish to obtain copies of the individual incident reports listed in the Trespass Report Listing, please submit a new public records request. This completes our response and closes this request.

CP at 17-18.

On the same day, May 8, Evergreen also wrote to West regarding request numbers 2012-010, 2012-011, 2012-013, and 2012-014. The letter stated, "In regards to the above-mentioned requests, additional time is needed in order to assemble and review the responsive records. Accordingly, your new estimated response date is May 18, 2012." CP at 18. Evergreen continued to correspond with West and to provide documents on May 18, May 31, June 29, July 20, and July 27.

On July 27, Evergreen wrote that because of a "clarification" on May 11, 2012, it had "expanded [the] search for records in order to include 'any trespass notices, records of verbal notices, records of any review or hearing related to such notices, and any final orders or dispositions of any appeals of said notices.'" CP at 262. It also stated that "if the latter records 'are contained in police reports, or any other sources' they will be provided as requested." CP at 262. The new estimated time for delivery of the documents was December 28.

II.     SUMMARY JUDGMENT

The College first moved for partial summary judgment on the PRA claims related to the first and second requests. West cross moved for summary judgment on the third request, arguing the College failed to comply with its own time estimate, did not make a good faith search for responsive records, and did not provide an accurate copy of the Trespass List. West attached copies of the Trespass Report Listing and another list provided by Evergreen to a previous requestor in 2011. The College cross moved for summary judgment regarding the third PRA request.

King filed a declaration with the partial summary judgment motion and stated, "The current list of those persons trespassed from [Evergreen] as of the date of his March 16, 2012 [request] appear on the 'Trespass Report Listing' attached as Exhibit I to his brief. This is the list I provided

4

West in response to his March 16, 2012 PRA request." CP at 249-50. King also declared that after a previous PRA requestor asked for the list of people banned from campus in August 2011, Police Services realized the list was outdated and updated it so as to not include the individuals "no longer considered trespassed from campus." CP at 250. She stated that as a result, the list provided to West was the current list.

On November 15, 2013, after hearing argument from the parties, the trial court issued a written order granting partial summary judgment, ruling that Evergreen responded in full to the first two requests, and that the amended time estimate within two business days of the original estimate was reasonable and complied with the PRA statute. The court also ruled that the Trespass List West argued was not the same as that provided to another requestor, was revised between the two record requests, and was the correct document. The trial court signed the written order in favor of the College, denied West's motion for summary judgment, and dismissed the PRA claims related to all three PRA requests.

On November 22, the College filed a motion to dismiss all remaining claims for failure to state a claim upon which relief could be granted[4] and for summary judgment.[5] On December 9, West again cross moved for summary judgment and for sanctions, under CR 11. On December 13 and December 19, West filed personal declarations that included attached documents and his version of the May 14, 2010 incident at Evergreen.

Also on December 13, the College filed its reply and several declarations including a second Hurley declaration with additional details of the incident at Evergreen. Hurley declared that he neither threatened to trespass West nor threatened to ban him from campus. Hurley further

---

[4] CR 12(b)(6).

[5] CR 56.

declared that West was free to come on campus and had done so since the May 14, 2010 incident. Hurley also corrected his previous statement about Sorger to say, "Chief Sorger determined that the situation did not warrant the issuance of a trespass warning to [West] prohibiting him from being on campus." CP at 91.

The Risk Management Client Services Director for the Washington Department of Enterprise Services also executed a declaration. He verified that West previously filed two tort claims: one on March 11, 2010, and one on May 14, 2010. He stated that the state did not have record of any other tort claims involving West and Evergreen. The May 14, 2010 claim regarded the May 14 incident at Evergreen. In the claim, West asserted,

> As part of a continuing pattern and policy of invidious violation of rights protected under 42 U.S.C. 1983-5 and 18 U.S.C. 241, [Evergreen] Vice president and other officials attempted to obstruct access to public records and threatened to "Trespass" West for attempting to obtain records in a reasonable time. [Evergreen] Police were summoned and conducted an investigation, although the police did not do anything of their own accord.

CP at 99. He also stated, "These continuing violations have caused substantial mental and emotional distress." CP at 99.

West filed a motion to continue summary judgment so that he could "reasonably review all the evidence." Report of Proceedings (RP) (Dec. 20, 2013) at 4. The College moved to strike West's December 13 and 19 declarations for being untimely. The trial court heard all of the motions on December 20.

The trial court denied West's motion to continue. It granted the College's motion to strike West's declarations. It further found no legal basis to conclude a seizure or false arrest occurred and granted the College's motion to dismiss and for summary judgment. The College argued that several causes of action should have been dismissed because West had not filed a tort claim; however, the trial court did not rely on this basis for dismissal in its ruling.

At the close of the motions hearing, West withdrew his CR 11 sanctions motion but stated, "I would point out that the undisputed facts that counsel relies upon were made in responsive filings to which no response was permitted. So to the extent that the Court rules on summary judgment, it's doing so based upon declarations that were not filed in a timely manner along with the original motion." RP (Dec. 20, 2013) at 42. The trial court responded that it had already determined the College's materials were properly filed.

On December 26, West filed a motion requesting a three day extension to file a supporting declaration, to allow his December 19 declaration to be filed, to allow his supplemental response to the College's December 19 filing, and to strike Hurley's second declaration. On January 3, 2014, the trial court entered the written final order that included denying West's motion for a continuance, granting the College's motion to strike West's declarations, granting the College's motion for summary judgment, and denying West's cross motion for summary judgment.

On January 13, West filed a motion to reconsider. In the motion, West asked the trial court to reconsider and to allow him to file his December 19 response. West argued the court abused its discretion by allowing the College to submit an altered declaration and by denying him the opportunity to file a response. Multiple citations[6] were entered to present an order denying West's motion to reconsider before different judges. On May 16, the parties argued the motion but the trial court did not sign the proposed order.

---

[6] In Thurston County Superior Court, a party notes a motion for hearing by filling a "Notice of Issue" document. We will refer to the filing as a citation.

On June 13, West filed a citation for his motion to reconsider to be heard on June 20. This hearing was stricken for "incorrect setting." CP at 202. West filed a notice of appeal on June 16, 2014. The notice indicated West's intent to appeal from the January 3 order, the May 16 final order, and all interlocutory rulings, including the November 15, 2013 order.

On June 19, West filed a citation for his motion to reconsider to be heard on June 27. On June 25, the College filed a motion to strike the motion and the hearing. The College argued the motion was untimely because West failed to note it for a hearing when he filed it. Additionally, the College argued the hearing was improper because West did not provide 14 days' notice prior to the hearing. On June 27, the trial court granted the College's motion because West's motion to reconsider was untimely.

ANALYSIS[7]

I.    MOTION TO RECONSIDER

West argues that the trial court abused its discretion and attempted to evade an appeal by not hearing his motion to reconsider. We disagree.

CR 59(b) requires that the movant file a motion to reconsider no later than 10 days after the entry of the judgment, order, or other decision. Here, the trial court granted the College's motion for partial summary judgment on January 3, 2014, dismissing all remaining claims. On January 13, West filed his motion to reconsider.

---

[7] As a threshold issue, the College argues that West's appeal is time barred under RAP 5.2(a). West contends that he filed his notice of appeal within the requisite time period. We prefer to decide cases on their merits rather than on procedural technicalities. *Buckner, Inc. v. Berkey Irrig. Supply*, 89 Wn. App. 906, 914, 951 P.2d 338 (1998). The Rules of Appellate Procedure are to be liberally interpreted "to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a). West's failure to note the motion did not deprive the trial court of the ability to hear the issue, and despite being far outside CR 59(b)'s 30 day requirement, it otherwise met the basic requirements of RAP 5.2(e). Without deciding the timeliness issue, we exercise our discretion to review West's appeal on the merits. RAP 1.2.

Roughly five months later, West then did not wait for the trial court's decision on the motion to reconsider and filed a notice of appeal. He filed the notice of appeal 11 days before the trial court issued its ruling on the motion to reconsider and three days before he noted his motion to reconsider for a hearing. The record does not support West's argument that the superior court attempted to evade an appeal by not hearing his motion for reconsideration. It also does not appear from the record before us that West was waiting for the outcome of his motion as he asserts in his brief. Additionally, West cites no legal authority to suggest the trial court abused its discretion, much less that it did so in order to avoid entering a final order that he could appeal from. We conclude West's assertions are meritless.

## II. SUMMARY JUDGMENT

West argues the trial court erred by granting the College's motions for partial summary judgment, which resulted in the dismissal of all his claims, including his PRA claim and the unlawful arrest and seizure claim. We disagree.

### A. Standard of Review

We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *Germeau v. Mason County*, 166 Wn. App. 789, 801, 271 P.3d 932 (2012). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). PRA disputes may be resolved on summary judgment. *Neigh. All. of Spokane Cty. v. County of Spokane*, 172

9

Wn.2d 702, 729, 261 P.3d 119 (2011). Judicial review of agency actions taken or challenged under the PRA is also de novo. RCW 42.56.550(3); *Neigh. All.*, 172 Wn.2d at 715.

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apt.–Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must set forth specific facts demonstrating that a material fact remains in dispute. *Loeffelholz*, 175 Wn.2d at 271. "[C]onclusory statements of fact will not suffice." *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 360, 753 P.2d 517 (1988).

If the nonmoving party fails to do so, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). We may affirm summary judgment on any ground supported by the record. *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

B.      PRA Claim

West argues the trial court erred by granting summary judgment on his PRA claim because Evergreen failed to make a good faith search and did not provide all the records West requested, withholding a "known responsive record." Br. of Appellant at 15. West asserts that Evergreen withheld the "Criminal Trespass Lists" and that he was provided a different list than another PRA requestor received "just a few months prior." Br. of Appellant at 12. West's argument only relates to his third PRA request made on March 16, 2012. West does not appeal the dismissal of the claims related to the first and second PRA requests.

We have not been provided West's March 16 PRA request. However, King stated in her declaration that West requested "a copy of those persons presently on the 'Trespass List.'" CP at 249. She also stated that after the previous PRA requestor asked for the list of people banned from campus in August 2011, Police Services realized the list was outdated and updated it to omit individuals no longer considered "trespassed from campus." CP at 250. She further declared that the list she provided to West was the current list.

Because we were not provided West's actual PRA request, we can only determine whether Evergreen failed to provide responsive records based on the record before us. While we have the power to correct or supplement the record, we are not required to do so. RAP 9.10; *In re Det. of Halgren*, 156 Wn.2d 795, 805, 132 P.3d 714 (2006). It is the appellant's responsibility to designate the necessary documents for review. *Halgren*, 156 Wn.2d at 804-05. Based on the record before us, West has not established that a genuine dispute of material fact exists regarding whether Evergreen withheld the Trespass List.

West also contends that Evergreen improperly instructed him to file another request when police reports should have been provided to him. The College does not deny that in one correspondence, Evergreen instructed West to file another request. Instead, the College seems to argue that the instruction was harmless because regardless of the correspondence, Evergreen continued to provide documents, even when the complaint was before the superior court. The College contends that the record shows Evergreen continued to comply with the request and was providing police reports and other responsive records after May 8.

In his summary judgment materials, West included copies of communications between himself and Evergreen. In a May 8 exchange, Evergreen informed West he needed to file a new PRA request in order to get individual incident reports. However, King's undisputed supplemental

declaration stated that she provided records on May 18, June 29, July 20, July 27, and notified West that the last installment of the requests would be complete by December 28.

West did not establish a genuine dispute of material fact as to his PRA claim and the College was entitled to judgment as matter of law. The trial court acted properly.

C.      Unlawful Arrest or Seizure Tort Claim

West also argues the trial court erred by dismissing his remaining claims. However, he only appeals his unlawful arrest or seizure claim arising out of the incident at Evergreen in May 2010. Therefore, we do not consider the additional claims dismissed at summary judgment. RAP 10.3(a).

Regarding the unlawful arrest or seizure claim, the College argues that we should affirm summary judgment because West failed to file a tort claim as required under RCW 4.92.100 and .110. We agree.

RCW 4.92.100(1) requires that all claims against the state arising out of tortious conduct must be filed with the office of risk management. To do so, the claim must be presented in person or by certified mail, on the standard tort claim form. RCW 4.92.100(1). "No action subject to the claim filing requirements of RCW 4.92.100 shall be commenced against the state . . . for damages arising out of tortious conduct until [60] calendar days have elapsed after the claim is presented to the office of risk management." RCW 4.92.110.

The College filed a declaration verifying that West previously filed two tort claims based on other factual situations. In the claim addressing events at Evergreen on May 14, 2010, West asserted that the College "attempted to obstruct access to public records and threatened to 'Trespass' [him]." CP at 99. Further, he stated, "[Evergreen] Police were summoned and conducted an investigation, although the police did not do anything of their own accord." CP at

99. He also stated, "These continuing violations have caused substantial mental and emotional distress." CP at 99.

The undisputed evidence demonstrates that West did not file a tort claim asserting unlawful arrest or seizure. West failed to properly file a tort claim. Summary judgment was proper.

III.     CONTINUANCE AND DECLARATIONS

West asserts that the trial court erred by "failing to grant a continuance, suppressing relevant evidence, allowing the submission of inconsistent and/or perjured testimony, and in granting summary judgment when factual issues were disputed." Br. of Appellant at 18. However, in his brief, West only argues that the trial court abused its discretion when it allowed Hurley's second declaration. West's arguments as to partial summary judgment are addressed above. Because West's brief presents no other clear arguments, we only review whether the trial court erred by admitting Hurley's second declaration. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

West contends the trial court allowed a "materially altered declaration" to be filed "at the last minute." Br. of Appellant at 19. West provides no argument to establish that either statement is true. Also, our review of the record does not support his assertions. The adverse party in a motion for summary judgment may file documents no later than 11 calendar days prior to the hearing and the moving party may file rebuttal documents no later than five days prior to the hearing. CR 56(c). Here, the moving party, the College, filed the first Hurley declaration approximately a month prior to the hearing date. It filed its reply in rebuttal, including the second Hurley declaration, seven days prior to the hearing. Therefore, the College timely filed the second Hurley declaration.

Additionally, in his first declaration, Hurley described the events on the day West went to Evergreen to review one of his 2010 PRA requests. Hurley stated, "Chief Sorger determined that the situation did not warrant the issuance of a criminal trespass *order* to [West] prohibiting him from being on campus." CP at 52 (emphasis added). In the second declaration, Hurley expanded on what happened and declared that he did not threaten West with criminal trespass or threaten to ban West from campus. Hurley clarified that West was free to come to campus and had done so since the incident. Hurley also corrected his statement about Sorger to say, "Chief Sorger determined that the situation did not warrant the issuance of a trespass *warning* to [West] prohibiting him from being on campus." CP at 91 (emphasis added).

West appears to argue that the use of the word "order" rather than "warning" proves a clear "illegal application" of Evergreen's trespass policy. Br. of Appellant at 19. Hurley's second declaration did not materially alter the first declaration and West fails to explain the significance of change from "order" to "warning." We conclude the trial court did not err by accepting Hurley's second declaration.

IV.    COSTS AND FEES

Wests asks that the case be remanded to the trial court "with instructions for the award of appropriate costs and penalties for the unlawful withholding of records related to the [Evergreen's] Trespass Policy and its unlawful application to arbitrarily bar citizens from lawful enjoyment of public lands in the absence of due process of law." Br. of Appellant 23. RCW 42.56.550(4) entitles the prevailing party in a PRA appeal against an agency to "all costs, including reasonable attorney fees, incurred in connection with such legal action," as well as a discretionary award of not more than $100 per day for each day the party's right to inspect or copy public records was

improperly denied. West is not entitled to costs and penalty fees under the PRA because he does not prevail. We do not award costs or other fees to West.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, A.C.J.

Lee, J.