[No. 86511-6.   En Banc.]
Argued June 28, 2012.      Decided September 13, 2012.

DEBRA LOEFFELHOLZ, *Respondent*, v. THE UNIVERSITY OF WASHINGTON ET AL., *Petitioners*.

*Robert M. Howie* and *Skylar A. Sherwood* (of *Riddell Williams PS*); *Howard M. Goodfriend* (of *Smith Goodfriend PS*); and *Anne F. Preston* and *Jared Van Kirk* (of *Garvey Schubert Barer*), for petitioners.

*Michael E. Withey* (of *Law Offices of Michael Withey*), for respondent.

¶1 OWENS, J. — In 2006 the legislature amended the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, to include sexual orientation as a protected class. After the amendment, Debra Loeffelholz sued the University of Washington and her superior, James Lukehart (collectively University), for discrimination based on sexual orientation. She alleges the sexual-orientation-based discrimination created a hostile work environment based on a series of preamendment acts and one potentially postamendment act. This case presents two related issues on appeal: (1) whether the WLAD amendment applies retroactively and, if not, whether preamendment discriminatory conduct is actionable and (2) whether a single comment made postamendment is a discriminatory act.

¶2 We hold that the WLAD amendment is not retroactive and that the preamendment conduct is not actionable as it was not unlawful when it occurred. The postamendment, allegedly discriminatory comment is arguably similar enough

to the preamendment conduct to survive summary judgment. Consequently, we affirm the Court of Appeals only in reversing summary judgment for the University and clarify that the Court of Appeals erred in allowing recovery for preamendment conduct.

## FACTS

¶3 Loeffelholz has worked in the University of Washington's asbestos office as a program coordinator since 2003. From 2003 to early 2006, Loeffelholz's supervisor was Lukehart. She had regular weekly meetings with him during this time. In early 2006, Lukehart ceased being her immediate supervisor. Lukehart, who was also a United States Army reservist, deployed to Iraq on June 25, 2006, and did not have any contact with Loeffelholz while overseas or any supervisory role over her upon returning.

¶4 Loeffelholz alleges that Lukehart created and maintained a hostile work environment against her based on her sexual orientation. The alleged discrimination began shortly after she started work in 2003 when Lukehart asked her if she was gay. After replying yes, Lukehart told her not to "flaunt it" around him. Clerk's Papers (CP) at 197. Lukehart's remark was the only explicit comment he made to Loeffelholz regarding her sexual orientation. Loeffelholz alleges that this remark injected hostility and intimidation into the work environment. She experienced this hostility and intimidation when Lukehart regularly discussed his hatred toward others and about getting revenge for perceived affronts. He also told Loeffelholz that he kept a gun in his vehicle and had anger management issues. Further, Lukehart revoked her flexible work schedule and denied her overtime. He also began denying her training opportunities; he refused to give her employment evaluations, despite repeated requests for them. Moreover, Loeffelholz alleges that Lukehart was instrumental in denying her advancement opportunities for two different

positions. She also felt Lukehart was trying to intimidate her when she applied for the second position because he informed her that he knew of her application. She felt intimidated because she had believed that structural safeguards prevented Lukehart from knowing of her application.

¶5 The final allegedly discriminatory act—and the only act to potentially occur postamendment—occurred during Lukehart's last group meeting before deploying to Iraq. During this meeting, he told the group that he was "going to come back a very angry man" from Iraq. *Id.* at 342. The exact date of this comment is unclear from the record other than that it necessarily occurred before Lukehart's last day of work on June 23, 2006.

¶6 Postdeployment, the University began an investigation into Lukehart's managerial style. The University found that Lukehart was manipulative of people and information and that he was intimidating and inappropriately shared personal information. It also found that he violated the integrity of the recruitment process.

¶7 Also postdeployment, but before Lukehart's return, Loeffelholz learned that Lukehart had taken other actions to promote an oppressive environment. These actions included Lukehart "making numerous allusions to his military training, his use and proficiency in guns and firearms, killing people, 'getting people', 'shock and awe', and blood and gore." *Id.* at 7, 342. Lukehart apparently also asked other employees for information on Loeffelholz so that he could fire her. Similarly, he told other employees that he disliked Loeffelholz because she was gay and overweight.

¶8 Loeffelholz filed suit against the University in the King County Superior Court on May 13, 2009, alleging that Lukehart had discriminated against her based on her sexual orientation. She alleged a hostile work environment claim, a retaliation claim, and a disparate treatment claim. The trial court granted summary judgment in favor of the University, finding that each claim was barred by the

applicable statutes of limitations. The trial court also granted Lukehart's motion to strike hearsay, which included much of the information Loeffelholz learned from the University's investigation. In granting summary judgment, the trial court found that it was unreasonable to say the "angry man" comment was motivated by Loeffelholz's sexual orientation. The trial court alternatively found that the amendment to chapter 49.60 RCW, which added sexual orientation as a protected class, was not retroactive. Accordingly, the trial court found that all actions before June 7, 2006, the amendment's effective date, were not actionable.

¶9 Loeffelholz appealed and the Court of Appeals reversed. The Court of Appeals held that whether Lukehart's "angry man" comment was a discriminatory act connected to Loeffelholz' hostile work environment claim was a genuine issue of material fact. *Loeffelholz v. Univ. of Wash.*, 162 Wn. App. 360, 367, 253 P.3d 483 (2011) ("[W]e conclude that the trial court erred by concluding as a matter of law that the comment was not sufficient to constitute a discriminatory act."). The court also held that Loeffelholz was entitled to an inference that this "angry man" comment was made after May 13, 2006, and was therefore within the statute of limitations. *Id.* at 368. The Court of Appeals did hold that the WLAD amendment was not retroactive but that the lack of retroactivity did not impact Loeffelholz's claim so long as the "angry man" comment was made after the amendment's effective date, June 7, 2006. *Id.* at 369. The court determined that whether the comment occurred after June 7, 2006, was a genuine issue of material fact and therefore remanded the case to the trial court. *Id.* The University then petitioned for review, which we granted. *Loeffelholz v. Univ. of Wash.*, 173 Wn.2d 1019, 272 P.3d 248 (2012).

## ISSUES PRESENTED

¶10 1. Is the alleged conduct that occurred before June 7, 2006, the effective date of the WLAD amendment, actionable?

¶11  2. Is the "angry man" comment a discriminatory act?

## ANALYSIS

### A. *Standard of Review*

¶12  We review an order granting summary judgment de novo. *Mohr v. Grantham*, 172 Wn.2d 844, 859, 262 P.3d 490 (2011). Summary judgment is appropriate when " 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting CR 56(c)). The evidence is reviewed in the light most favorable to the nonmoving party. *Id.* The nonmoving party " 'must set forth specific facts' " to support its allegations and show a genuine issue of material fact. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 230, 119 P.3d 325 (2005) (quoting CR 56(e)).

### B. *Preamendment Conduct*

¶13  Allowing Loeffelholz to recover for preamendment conduct would constitute retroactive application of the WLAD amendment, thereby violating due process rights of the University. Whether the WLAD amendment applies retroactively is the preliminary issue before us. Loeffelholz argues the statute applies retroactively because it is remedial in nature. This is false. "We presume that a statute applies prospectively, unless the legislature intends otherwise," or unless the amendment is remedial in nature. *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 809, 272 P.3d 209 (2012); *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007). To determine whether the legislature intends otherwise, we may look to legislative history. *Barstad v. Stewart Title Guar. Co.*, 145 Wn.2d 528, 537, 39 P.3d 984 (2002). A statute is not remedial when it creates a new right of action. *Johnston v. Beneficial Mgmt. Corp. of Am.*, 85 Wn.2d 637, 641, 538 P.2d 510 (1975).

¶14  Here, the plain language and legislative history indicate that the WLAD amendment applies prospec-

tively only. First, the plain language of the amendment does not explicitly state that the amendment applies retroactively. LAWS OF 2006, ch. 4. Loeffelholz's attempt to claim that chapter 49.60 RCW always prohibited all forms of discrimination is unconvincing, primarily because the list of protected classes in chapter 49.60 RCW is exhaustive, not representative. *See Kilian v. Atkinson*, 147 Wn.2d 16, 27, 50 P.3d 638 (2002) (refusing to recognize a cause of action for age discrimination "when age is quite obviously not included in the list of protected classes"), 30 (Madsen, J., concurring). Accordingly, the plain language supports prospective application.

¶15 Second, legislative history supports prospective application as illustrated by the final bill report, which states that the amendment "expanded [the WLAD] to prohibit discrimination based on a person's sexual orientation." FINAL B. REP. on Engrossed Substitute H.B. 2661, at 2, 59th Leg., Reg. Sess. (Wash. 2006). This language implies that before the amendment, WLAD did not protect against discrimination based on sexual orientation. Thus, based on plain language and legislative history, we hold that the WLAD amendment applies prospectively only.

¶16 Because the WLAD amendment applies prospectively only, Loeffelholz cannot recover for acts that occurred prior to the amendment. To do so would hold the University liable for conduct that was not unlawful at the time it was committed. This would violate the core tenet of retroactivity jurisprudence that "individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994); *see Hammack v. Monroe St. Lumber Co.*, 54 Wn.2d 224, 232, 339 P.2d 684 (1959). Before June 7, 2006, Lukehart's sexual-orientation-based harassment was merely reprehensible, not unlawful. Loeffelholz cannot recover for conduct that was not unlawful when it was committed absent retroactive application of the law.

¶17 Loeffelholz argues for a contrary result, contending that she is entitled to recover for preamendment acts because of the unique nature of a hostile work environment. A hostile work environment " 'occurs over a series of days or perhaps years . . . . Such claims are based on the cumulative effect of individual acts.' " *Antonius v. King County*, 153 Wn.2d 256, 264, 103 P.3d 729 (2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)). We relied on the unique nature of a hostile work environment when we decided in *Antonius* to allow a plaintiff to recover for all related conduct straddling the statute of limitations. *Id.* at 271. In *Antonius*, we adopted the two-part inquiry set forth in *Morgan* for determining whether a claim is timely: "[A] 'court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.' " *Id.* (quoting *Morgan*, 536 U.S. at 120).

¶18 *Antonius* is readily distinguishable from this case because recovery for actions outside the statute of limitations does not raise the same due process concerns as does recovery for conduct that was not unlawful when committed. It is true that we expressed disfavor for parsing a hostile work environment claim into component parts "for statute of limitations purposes" in *Antonius*. *Id.* at 268. However, we were not presented with, and expressed no opinion on, whether it would be appropriate to do so in the context of conduct straddling the effective date of the amendment making the conduct at issue unlawful. *Cf. Graves v. District of Columbia*, 843 F. Supp. 2d 106, 109 (D.D.C. 2012) (referring to *Morgan*, 536 U.S. 101, and the Civil Rights Act of 1991). Due process concerns exist here that were not present in *Antonius*. This distinction is sufficient to justify prohibiting recovery for acts that occurred preamendment.

¶19 Nevertheless, while the preamendment conduct is unrecoverable, it is still admissible as background evidence

to prove why postamendment conduct is discriminatory. *Id.* at 111 (holding that pre-enactment conduct is unrecoverable but may be admissible as background evidence); *see Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 439 (1st Cir. 1997).[1] *Graves* involved a similar factual scenario where the plaintiff was seeking to recover for a hostile work environment that straddled the effective date of a statute, the Civil Rights Act of 1991. 843 F. Supp. 2d at 106, 109. "The [c]ourt recognize[d] that conduct that is non-actionable for purposes of liability may sometimes be used for a particular purpose in support of actionable claims." *Id.* at 111. For example, earlier conduct may be relevant to prove the intent behind post-effective-date conduct. *Morrison*, 108 F.3d at 439.

¶20 Allowing Loeffelholz to rely on preamendment conduct to prove intent behind postamendment conduct avoids Loeffelholz's having to suffer through an entirely new series of discriminatory acts to establish a hostile work environment. "When examining the 'totality of the circumstances' as they existed in a work environment, it would defy common sense to lower an 'iron curtain' . . . merely because relief is not available for events occurring before that date." *Van Jelgerhuis v. Mercury Fin. Co.*, 940 F. Supp. 1344, 1355 n.1 (S.D. Ind. 1996) (citing *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1349 (7th Cir. 1995)). Therefore, assuming the "angry man" comment did occur postamendment, Loeffelholz may use the preamendment conduct to explain why the "angry man" comment constituted sexual-orientation-based harassment.

¶21 Additionally, such a result is supported by the legislature's mandate that WLAD provisions "be construed liberally," RCW 49.60.020, to prevent "discrimination [that] threatens not only the rights and proper privileges of [the State's] inhabitants but menaces the institutions and foundation of a free democratic state," RCW 49.60.010. *See*

---

[1] In the context of employment discrimination, we have traditionally found federal case law persuasive. *See Antonius*, 153 Wn.2d at 266.

*Antonius*, 153 Wn.2d at 267. While the mandate of liberal construction does not compel this result, it certainly favors it. This result strikes a balance between the liberal construction required by the legislature and the due process interests implicated by retroactive application.

¶22 From a practical perspective, Loeffelholz's ability to recover damages is limited to the effective date of the WLAD amendment forward, as opposed to only the date of the "angry man" comment. Recovery from the effective date is appropriate because a contributing act postamendment illustrates that the cloud of a hostile work environment continued to hang over Loeffelholz's employment postamendment. Here, whether an actionable claim exists to survive summary judgment depends on whether Lukehart's "angry man" comment occurred after June 7, 2006, and related to the previous abusive environment for which she cannot recover.

## C. "Angry Man" Comment

¶23 Finally, we must decide whether the "angry man" comment, when given context by previous conduct, is sufficient to establish a prima facie hostile work environment claim. To establish a prima facie hostile work environment claim, a plaintiff must show the following four elements: "(1) the harassment was unwelcome, (2) the harassment was because [plaintiff was a member of a protected class], (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer." *Id.* at 261. The third element is satisfied if the harassment is " 'sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment[,] . . . to be determined with regard to the totality of the circumstances.' " *Id.* (alterations in original) (quoting *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985)).

¶24 When considering the totality of the circumstances, which includes the preamendment conduct, we

conclude that the "angry man" comment establishes a prima facie hostile work environment claim. Loeffelholz described this comment during a deposition as being an example of one of Lukehart's allusions to "getting people" or to his military training. Specifically, she said:

> The only thing that I can recall him saying that was disturbing in a group meeting was the last meeting he held before he went to Iraq. He held a meeting to let everybody know that he was going to Iraq, and toward the end of that meeting, he said, "I am going to come back a very angry man."

CP at 342. The Court of Appeals held the comment created a genuine issue of material fact when viewed in the context of the totality of the circumstances along with all "reasonable inferences therefrom" favoring Loeffelholz. *Loeffelholz*, 162 Wn. App. at 367. While the exact date of the comment is unclear, the record supports an inference in favor of Loeffelholz that it occurred postamendment. Although the relationship between this comment and the alleged hostile work environment is tenuous, the Court of Appeals was correct.

¶25 The standard for linking discriminatory acts together in the hostile work environment context is not high. "The acts must have some relationship to each other to constitute part of the same hostile work environment claim." *Antonius*, 153 Wn.2d at 271. Here, although Lukehart made the "angry man" comment to a group, he conceivably intended it to have special meaning for Loeffelholz.[2] She knew that Lukehart disliked lesbians and that he had anger management problems as illustrated by his previous comments that he had a volatile temper and kept a gun. Taken in the context of such comments, a reasonable juror could infer from these events that the "angry man" comment was a natural extension of the

---

[2] At the time of the "angry man" comment, Lukehart's employment relationship to Loeffelholz is unclear. Regardless, Lukehart appears to still have had some control because Loeffelholz was attending the group meeting when Lukehart made the comment.

conduct that made up the preamendment oppressive work environment.[3]

¶26 The above analysis does not say that the preamendment conduct establishes a prima facie claim in contravention of retroactivity concerns. Rather, the preamendment conduct establishes that the "angry man" comment could be severe enough, on its own, to alter the conditions of employment and establish a hostile work environment. We recognize that a single act of harassment is rarely enough to establish a prima facie claim, but this case presents a unique set of facts as discussed above. Regardless, whether the prima facie claim is established is for the trial court to decide on remand if summary judgment is presented again. To that end, additional discovery may be appropriate in order to determine if any other actions occurred postamendment.

¶27 The University contends the "angry man" comment is not sufficiently related to the preamendment conduct and relies on a recent Court of Appeals decision, *Crownover v. Dep't of Transp.*, 165 Wn. App. 131, 265 P.3d 971 (2011), *review denied*, 173 Wn.2d 1030, 274 P.3d 374 (2012), to support its argument. In *Crownover*, the Court of Appeals affirmed dismissal of a plaintiff's hostile work environment claim where the only timely event was the supervisor's comment to his maintenance crew about "spending quality time together" at a work site. *Id.* at 144-45. The court reasoned that this seemingly innocuous comment simply could not anchor the supervisor's previous sexually charged statements. *Id.* at 145.

¶28 However, *Crownover* is distinguishable. Unlike the comment in *Crownover*, the "angry man" comment is similar to and related to the previous comments at issue, specifically that Lukehart had anger management issues and kept a gun in his vehicle. *Crownover*, therefore, does not alter our analysis.

---

[3] The relationship between the preamendment conduct and the "angry man" comment is evident even without considering the inadmissible hearsay.

¶29 The "angry man" comment, when considered in light of the preamendment conduct, is sufficient to preclude summary judgment, presuming Lukehart made the comment after June 7, 2006.

## CONCLUSION

¶30 The WLAD amendment prohibiting discrimination based on sexual orientation is not retroactive. Therefore, the conduct occurring preamendment, June 7, 2006, is not recoverable. Nevertheless, because of the unique nature of a hostile work environment claim, this unrecoverable conduct is admissible as background evidence to give context to any postamendment discriminatory conduct. In this case, assuming Lukehart's "angry man" comment was made postamendment, a genuine issue of material fact exists that prevents summary judgment. Consequently, we affirm only the Court of Appeals' reversal of summary judgment, and we reverse its reasoning, which allowed recovery for preamendment conduct. We remand the case for further proceedings consistent with this opinion.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.