# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

ESTERA GRADINARU,
          Appellant,

       v.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL
AND HEALTH SERVICES,

         Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 70138-0-I

ORDER GRANTING MOTIONS
TO PUBLISH OPINION

Respondent Washington State Department of Social and Health Services and non-party Stuart C. Morgan each filed a motion to publish the court's opinion entered March 24, 2014. The court requested and appellant filed an answer to the motions pursuant to RAP 12.3(e). After due consideration, the panel has determined that the motions should be granted.

Now therefore, it is hereby

ORDERED that the motions to publish the opinion are granted.

Done this 14th day of May, 2014.

FOR THE PANEL:

_____

2014 MAY 14 AM 9:06
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| ESTERA GRADINARU, | ) | No. 70138-0-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON | ) | |
| DEPARTMENT OF SOCIAL | ) | |
| AND HEALTH SERVICES, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: March 24, 2014 |
| | ) | |

VERELLEN, J. — When a caretaker uses a vulnerable adult's property to further

the caretaker's own goal, even if self-destructive, such use constitutes financial

exploitation as defined by former RCW 74.34.020(6) (2010). The Department of Social

and Health Services (Department) did not err in concluding that Estera Gradinaru

financially exploited a vulnerable adult when she used that adult's morphine in a failed

suicide attempt. We affirm.

## FACTS

In October 2010, Gradinaru was the co-owner of an adult family home in

Bellevue. Elaine, one of the residents of the home, was in hospice care and had been

prescribed "comfort medications," including liquid morphine, for end of life treatment.[1]

On October 12, Gradinaru was emotionally distressed and in physical pain. She

took Elaine's morphine with her to a park and ride and ingested one-half capful of the

---

[1] The parties refer to Elaine only by her first name.

morphine, which made her feel sleepy. Her father arrived at the park and ride and Gradinaru was taken to Overlake Hospital. She was admitted to the psychiatric unit after she told the treating staff that she ingested the morphine in a failed suicide attempt.

The Department investigated and made a preliminary finding that Gradinaru financially exploited a vulnerable adult. On appeal, an administrative law judge issued an initial order reversing the Department's finding. The Department petitioned the Board of Appeals (Board) to review the initial order. In its review decision and final order, the Board concluded that Gradinaru financially exploited a vulnerable adult. Gradinaru appealed to King County Superior Court, which affirmed the Board's review decision and final order.

Gradinaru appeals.

## DISCUSSION

Gradinaru argues that her failed suicide attempt was not "financial exploitation" of a vulnerable adult as that term is defined in former RCW 74.34.020(6).[2] We disagree.

---

[2] In 2011, the statute was updated. RCW 74.34.020(6) now states:

"Financial exploitation" means the illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult by any person or entity for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage. "Financial exploitation" includes, but is not limited to:

(a) The use of deception, intimidation, or undue influence by a person or entity in a position of trust and confidence with a vulnerable adult to obtain or use the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult;

(b) The breach of a fiduciary duty, including, but not limited to, the misuse of a power of attorney, trust, or a guardianship appointment, that results in the unauthorized appropriation, sale, or transfer of the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult; or

The Administrative Procedure Act (APA) governs our review of the Board's decision.[3] "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity."[4] We will reverse if the Board "erroneously interpreted or applied the law."[5] The interpretation of "financial exploitation" raises a question of law and is reviewed de novo under the error of law standard.[6]

The Abuse of Vulnerable Adults Act (Act) was enacted to protect vulnerable adults who "may be subjected to abuse, neglect, financial exploitation, or abandonment by a family member, care provider, or other person who has a relationship with the vulnerable adult."[7] Former RCW 74.34.020(6) defines "financial exploitation" as "the illegal or improper use of the property, income, resources, or trust funds of the vulnerable adult by any person for any person's profit or advantage other than for the vulnerable adult's profit or advantage." A finding of financial exploitation prohibits an individual from being employed in a capacity that would allow him or her to have unsupervised access to vulnerable adults.[8]

---

(c) Obtaining or using a vulnerable adult's property, income, resources, or trust funds without lawful authority, by a person or entity who knows or clearly should know that the vulnerable adult lacks the capacity to consent to the release or use of his or her property, income, resources, or trust funds.

[3] See RCW 34.05.570; Utter v. Dep't of Soc. and Health Servs., 140 Wn. App. 293, 299, 165 P.3d 399 (2007).

[4] RCW 34.05.570(1)(a).

[5] RCW 34.05.570(3)(d).

[6] RCW 34.05.570(3)(d); Life Care Ctrs. of Am., Inc. v. Dep't of Soc. & Health Servs., 162 Wn. App. 370, 374, 254 P.3d 919 (2011).

[7] RCW 74.34.005(1) (legislative findings).

[8] Former RCW 74.39A.050(8) (2011).

Gradinaru contends that her use of the morphine did not constitute an "advantage" to her because attempting suicide is not medically beneficial.

The term "advantage" is not defined in the Act. Undefined words in a statute are accorded their ordinary meanings.[9] The dictionary defines "advantage" as "a more favorable or improved position or condition . . . benefit, profit, or gain of any kind."[10] In the context of this statute, a person engaging in the unauthorized use of a vulnerable adult's property receives an advantage when that use benefits or facilitates the goals of the person using the property, whether or not that goal is wise or healthy.

Any attempt at suicide is troubling, but the question presented here is whether the use of Elaine's property benefited Gradinaru by allowing her to further her goal, even if self-destructive, and thus was a use prohibited under the statute. Gradinaru's goals were advanced by gaining access to Elaine's morphine. Gradinaru did not have to spend her own money or time finding some other source of morphine. And it is undisputed that Gradinaru's use of Elaine's morphine did not profit or advantage Elaine.

Gradinaru argues that it is not reasonable to construe an attempt to commit suicide as an act taken for the benefit or gain of the actor because it results in medical harm. But nothing in the statute requires the court or the Department to consider whether the illegal or improper use of the victim's medication was helpful or harmful to the individual who used the medication. The focus of the statute is to protect vulnerable adults. Allowing an exception for using a vulnerable adult's property in a way that is

---

[9] State v. Standifer, 110 Wn.2d 90, 92, 750 P.2d 258 (1988) ("Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning.").

[10] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 30 (2002).

harmful would lead to an absurd result.[11] For example, if a drug addict steals a vulnerable adult's medication for his own illicit use, he should not evade a finding of financial exploitation because his drug use is medically harmful to him.[12]

Gradinaru argues that the Board's interpretation leads to absurd results. Specifically, she contends that, under the Board's interpretation, any person who attempts to commit suicide using property stolen from a vulnerable adult (a gun, a rope, etcetera) will be liable for financial exploitation. But this result is consistent with the purpose of the statute: to protect a vulnerable adult who is unable to protect herself by penalizing an individual who improperly or illegally uses that vulnerable adult's property for her own purpose in a way that does not benefit the vulnerable adult.

Next, Gradinaru argues that the Board's interpretation of the statute is improper because it does not require a "financial" benefit to the user, as implicitly required by the term "financial exploitation." Gradinaru argues that "financial" extends only to a vulnerable adult's "liquid" resources.[13] But her argument ignores that "financial exploitation" is defined by the statute to expressly include the use of "property, income, resources, or trust funds." It is not limited to liquid assets. In this case, the morphine

---

[11] Hangartner v. City of Seattle, 151 Wn.2d 439, 448, 90 P.3d 26 (2004) ("We will not interpret a statute in a manner that leads to an absurd result.").

[12] Gradinaru argues that comparison to a drug addict is inappropriate because (1) the drug addict benefits financially because he saves money by using stolen medications rather than buying them, and (2) the drug addict harms the vulnerable adult because those medications are no longer available for the vulnerable adult's use. Because she arguably benefited financially by using Elaine's morphine rather than buying her own and because her use of the morphine potentially deprived Elaine from using it in the future, Gradinaru's distinction is not persuasive.

[13] Appellant's Br. at 9.

was Elaine's property. Whether Gradinaru chose to sell or use that property, it was to her own advantage rather than Elaine's advantage and constituted financial exploitation.

Finally, Gradinaru argues that the examples of "financial exploitation" provided in the statute support her argument that only use of "financial assets" is prohibited.[14] We note that the nonexclusive list of examples were not part of the statute when the Department determined that Gradinaru committed financial exploitation.[15] Even so, the examples include the use of a vulnerable adult's "property, income, resources, or trust funds," and are not limited to "financial assets."[16] Therefore, the recently added examples do not support a different result.

Financial exploitation extends to the illegal or improper use of a vulnerable adult's property to further a goal of the person who took that property. The Department did not err in concluding that Gradinaru's illegal taking and use of a patient's morphine was an act of financial exploitation as defined by the statute. We affirm.

WE CONCUR:

---

[14] Appellant's Br. at 9-10.

[15] Loeffelholz v. Univ. of Washington, 175 Wn.2d 264, 271, 285 P.3d 854 (2012) (courts presume that a statute applies prospectively, unless the legislature intends otherwise or the amendment is remedial in nature).

[16] RCW 74.34.020(6)(c).