IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CLEAREAR LLC d/b/a ACQUAMD, a Washington Limited Liability Company, and ILICH VAHIMI and KAILA VAHIMI, Husband and Wife, and the Marital Community Which They Comprise,<br><br>    Appellant,<br><br>    v.<br><br>DELUE LAW, PLLC, a Washington Professional Limited Liability Company, and; DANA DANIEL DELUE a/k/a DAN DELUE, Individually and on Behalf of the Marital Community Comprised of DANA DANIEL "DAN" DELUE and JANE DOE DELUE.<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 80773-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, J. — Ilich Vahimi and a company he formed, ClearEar LLC, brought a legal malpractice claim against an attorney Vahimi hired to review and revise a contract between ClearEar and a manufacturer in China. The plaintiffs alleged that the attorney was negligent because revisions he suggested provided a basis for the manufacturer to appropriate ClearEar's intellectual property. The trial court granted the attorney's motion for summary judgment and dismissed the complaint for lack of causation. Finding no error, we affirm.

FACTS

Ilich Vahimi invented a medical/homecare device called "AcquaMD," to remove water from the ear canal using ultrasound technology. In 2015, Vahimi identified a potential manufacturer for the device in China, Guangdong Shunde Luhua Photoelectric New Material Industrial Co., Ltd. ("Luhua"). In April 2015, Vahimi formed a corporation, ClearEar, LLC, for the purpose of producing and marketing the product.

In June of 2015, Vahimi was preparing to travel to China in order to finalize a manufacturing contract with Luhua. After interviewing several attorneys, Vahimi hired Seattle attorney Dan DeLue to advise him and ClearEar in connection with the contract. Vahimi gave DeLue a copy of the contract Luhua had proposed and DeLue agreed to review it and propose changes. Vahimi told DeLue that his goal was to retain his intellectual property rights to the AcquaMD device. DeLue produced a "redline" version of the contract with proposed revisions.[1] After DeLue's review of the contract was complete, Vahimi asked him to close his file and DeLue refunded $600 of the $1,500 Vahimi had paid him. About two weeks later, on June 13, 2016, Vahimi and the principal of Luhua signed the "Production Development Agreement."

More than a year later, in August 2017, the relationship between ClearEar and Luhua became strained following disagreements that arose during the manufacturing process. Vahimi learned that Luhau had made copies of the

---

[1] The contract is written in both Chinese and English. DeLue proposed changes only to the English provisions.

industrial molds and was "selling the AcquaMD device worldwide through four distributors." When Vahimi later informed DeLue of this development, DeLue referred him and ClearEar to another attorney.

On May 6, 2019, ClearEar and Vahimi, (collectively "ClearEar") brought a lawsuit against DeLue and his law firm, DeLue Law, P.L.L.C., alleging legal malpractice.[2] ClearEar focused on DeLue's revisions to a provision of the contract in the section governing "Ownership of Technological Achievements." Before DeLue's edits, paragraph 3 of that section read:

> (3) After completion of the sampling work, [Luhua] is entitled to use the results of follow-up research and development improvements. Any substantial or creative characteristics of the new technological advances and technological achievements will be all owned by [Luhua]

DeLue's redlined version, incorporated into the final contract, provided as follows:

> (3) After completion of the sampling work, [Luhau] is entitled to use the results of follow-up research and development improvements that are derivative to the purpose of this contract. Those derivative develops[3] and technological achievements shall belong to [Luhua]. Any substantial or creative characteristics of the new technological advances and technological achievements which are derivative to this Agreement will be all owned by [Luhua].

ClearEar alleged that, in proposing the above changes, DeLue's negligent advice resulted in the "transfer significant and valuable intellectual property rights" to Luhua. ClearEar claimed that this negligence caused damages, resulting from the loss of ClearEar's intellectual property rights and lost revenue.

---

[2] The complaint also asserted a cause of action for negligent misrepresentation. ClearEar does not challenge the dismissal of that claim.

[3] This is likely a translation or scrivener's error contained in the dual language contract.

The defendants (collectively "DeLue") moved for summary judgment. DeLue's motion focused on causation. He argued that any damages to ClearEar were caused solely by Luhua's piracy, and not by any proposed changes in the contract and there was no evidence that different contract language could have prevented ClearEar's alleged damages.

ClearEar opposed the motion, contending that proximate cause is "almost always" a question for the trier of fact. ClearEar also claimed that Luhua specifically relied on language "approved" by Delue to justify its conduct, and therefore, DeLue was "responsible for the effects of [those] changes."

Following a hearing on the motion, the court granted the motion and dismissed the complaint. ClearEar timely appealed.

ANALYSIS

As below, ClearEar argues that causation, as a general matter, is reserved for the trier of fact and that here in particular, genuine issues of material fact as to causation preclude summary judgment.

This court reviews a summary judgment order de novo. Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012). We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 256, 616 P.2d 644 (1980). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Jones v. Allstate Ins. Co., 146

4

Wn.2d 291, 300-01, 45 P.3d 1068 (2002). A material fact is one upon which the outcome of the litigation depends, either in whole or in part. VersusLaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319, 111 P.3d 866 (2005). The court should grant summary judgment when reasonable minds could reach only one conclusion. Id.

To establish legal malpractice, a plaintiff must show "(1) the existence of an attorney-client relationship giving rise to a duty of care to the client, (2) act or omission in breach of the duty, (3) damages to the client, and (4) proximate causation between the breach and damages." Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 863-64, 147 P.3d 600 (2006). DeLue moved for summary judgment solely based on lack of proximate causation. For this reason, we address only causation.

"General principles of causation are no different in a legal malpractice action than in an ordinary negligence case." Halvorsen v. Ferguson, 46 Wn. App. 708, 719, 735 P.2d 675 (1986). The burden is on the legal malpractice plaintiff to show that the attorney's negligence was the proximate cause of the injury. Hansen v. Wightman, 14 Wn. App. 78, 88, 538 P.2d 1238 (1975) (abrogated in part by, Bowman v. Two, 104 Wn.2d. 181, 704 P.2d 140 (1985)). Proximate cause is the nexus between breach of duty and resulting injury. Halvorsen, 46 Wn. App. at 719. Proximate cause has two elements: cause in fact and legal causation. City of Seattle v. Blume, 134 Wn.2d 243, 251, 947 P.2d 223 (1997). "Cause in fact refers to the 'but for' consequences of an act, that is, the immediate connection between an act and an injury." Id. at 251-52. The

5

plaintiff must demonstrate that "but for" the attorney's negligence the plaintiff would have obtained a better result. <u>Smith</u>, 135 Wn. App. at 864. Legal causation is based on policy considerations in determining how far the consequences of an act should extend. <u>Blume</u>, 134 Wn .2d at 252. Proximate cause is usually the province of the jury. <u>Brust v. Newton</u>, 70 Wn. App. 286, 291-93, 852 P.2d 1092 (1993). However, the trial court can decide proximate cause as a matter of law if "'reasonable minds could not differ.'" <u>Smith</u>, 135 Wn. App. at 864 (quoting <u>Hertog v. City of Seattle</u>, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)).

To avoid summary judgment on proximate cause, ClearEar had to show that DeLue's breach of his professional duties caused the loss of its intellectual property and lost revenue. In the context of this negotiated contract, ClearEar had to show that but for DeLue's negligence, he would have secured a "better" contract (more favorable to ClearEar) or an improved outcome. See <u>Id.</u> at 864.

With no analysis of the specific language DeLue inserted, ClearEar maintains that paragraph 3 "facilitated" Luhua's piracy. The plain language of that provision does not support this assertion. The proposed amendments to paragraph 3 clarified that Luhua's rights to use research and development improvements were limited to those that were "derivative to the purpose of the contract."

Viewing this paragraph in the context of the other provisions of the contract, which ClearEar fails to address, it is evident that the challenged language, and the contract in general did not transfer ClearEar's intellectual

6

property interests in the AcquaMD product and prohibited Luhua from producing and marketing the same product. ClearEar fails to mention that paragraph 1 of the "Ownership of Technological Achievements" section, as originally proposed by Luhua, provided that the intellectual property rights to the AcquaMD device would be jointly owned by ClearEar and the manufacturer. But the redlined version of that provision, which Luhau accepted, provides that ClearEar solely retains the intellectual property rights to its product:

> (1) In the performance of [the] contract herein, all the technological achievements and [r]elated intellectual property rights [are] owned by ~~both~~ only [ClearEar] <u>as concerns the product and necessary tooling.</u> ~~and [Luhua]. [ClearEar] only at the unit and their subordinate units in range, beyond the agreed scope of use, and should be resolved through consultation with [Luhua].~~[4]

DeLue also proposed amendments to the right to manufacture provision that were protective of ClearEar. As redlined by DeLue and memorialized in the final contract, the provision states:

> (2) In the performance of [the] contract herein, the <u>license to the</u> right of manufacturing the products developed by [Luhua] belongs to [Luhua] <u>for the benefit of [ClearEar] only.</u>

DeLue also added an "INTELLECTUAL PROPERTY OWNERSHIP" section to the contract. That section provides, in relevant part, that there would be no transfer of "background technology." Specifically, any technology or intellectual property that was created or developed before the effective date of the contract would be retained by the party who developed such technology or intellectual property. Foreground technology, created in connection with the manufacturing contract, would belong to the party who created it. This section

---

[4] Terms added by DeLue are indicated by underlining and terms deleted indicated by strike through.

7

expressly gives ClearEar "full and exclusive" ownership of preexisting or "Background" technology and "Foreground" technology, as it relates to the "product to be manufactured." This section also confirms Luhua's ownership of preexisting background technology and of "derivative technological advancements," as set forth in paragraph 3 of the "Ownership of Technological Achievements" section.

The amendment DeLue proposed which assigned rights to "development improvements that are derivative to the purpose of this contract" to Luhua did not facilitate or permit the manufacturer to produce and market a product that is undisputedly "exactly the same" as the AcquaMD device.

ClearEar places great emphasis on the fact that when it confronted Luhua by email about whether it had appropriated ClearEar's intellectual property, Luhua pointed to language DeLue proposed in paragraph 3 as justification for its actions. However, there are critical flaws in its argument.

First, in the email ClearEar relies on, Luhua quoted the language of the initial proposed contract, not the final contract. Luhua asserted that according to paragraph 1 in the "Ownership of Technological Achievements" section, all "technological achievements" and "intellectual property rights" in connection with the product are owned jointly by ClearEar and the manufacturer. But, as explained, DeLue proposed material changes to that language which Luhua accepted and the final contract provides for ClearEar's exclusive intellectual property rights. Luhua also cited the former language of paragraph 3, omitting the language added by DeLue, which clarified that Luhua's right to use "follow-up

research and development improvements" was limited to "derivative develops"[5] that were "derivative to the purpose of [the] contract."

Second, even if it were clear that Luhua relied on language proposed by DeLue in the final contract to justify its actions, ClearEar makes no attempt to explain why it would be reasonable for Luhua construe those terms as conferring intellectual property rights on the manufacturer as to the AcquaMD device. Luhua was asserting a right to produce and market "exactly the same" product, not a product based on derivative technological developments. The contract, as amended based on DeLue's revisions, only gave Luhua rights to derivative technology and improvements, and protected ClearEar's intellectual property rights to the AcquaMD product itself.

ClearEar claims the trier of fact could draw reasonable inferences from the facts to conclude that, but for DeLue's professional negligence, the manufacturer would have either proceeded with the original contract or would have accepted other unspecified amendments that fully protected its intellectual property rights. ClearEar cites the following "facts": (1) Luhua proposed an initial contract that was "more favorable" to ClearEar, (2) Luhua accepted all changes proposed by Delue, (3) and Luhua expressly relied on language inserted by DeLue to justify its "piracy." These conclusory assertions are not supported by the evidence in the record. ClearEar fails to identify any contract provision that, before revision by DeLue, was more favorable or more protective of its intellectual property rights. And a review of the redlined contract reveals the opposite. As Delue

---

[5] This is likely a translation or scrivener's error contained in the dual language contract.

pointed out in his declaration, the contract Luhua originally proposed could be characterized as "fairly one-sided" and "arguably gave Luhua rights to the technology ClearEar had already developed."

And while Luhua accepted the majority of amendments DeLue proposed, it did not accept all of them. Luhua rejected DeLue's proposals regarding jurisdiction and choice of law. The record does not establish that the manufacturer would have accepted any and all terms ClearEar proposed. And more importantly, ClearEar does not describe what terms DeLue should have suggested that would have effectively prevented the manufacturer's actions. Finally, as noted, Luhua's claim that it was acting within its contractual rights was based on the language of the preliminary contract, not language proposed by DeLue.

In sum, ClearEar does not point to any facts supporting the inference that it would have "'achieved a better result had the attorney not been negligent.'" Id. at 870 (quoting VersusLaw, 127 Wn. App. at 328). And as here, where the causal connection is "'so speculative and indirect'" that reasonable minds could not differ, causation is a question of law for the court. Behla v. R.J. Jung, LLC, 11 Wn. App. 2d 329, 347, 453 P.3d 729 (2019) (quoting Mehlert v. Baseball of Seattle, Inc., 1 Wn. App. 2d 115, 119, 404 P.3d 97 (2017)).

ClearEar failed to establish a prima facie case of causation and its legal malpractice case cannot withstand a motion for summary judgment without such a showing. We affirm the trial court's order granting summary judgment.

Affirmed.

WE CONCUR:

Andrus, A.C.J.          Mann, C.J.