**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FRANK DEYOUNG,<br><br>　　　　　　　　　Appellant,<br><br>　　　v.<br><br>THE CITY OF MOUNT VERNON; and THE DEPARTMENT OF LABOR AND INDUSTRIES,<br><br>　　　　　　　　　Respondents. | No. 84561-6-I<br><br>DIVISION ONE<br><br>ORDER GRANTING MOTION FOR PARTIAL RECONSIDERATION, AND WITHDRAWING OPINION, AND SUBSTITUTING OPINION |

Respondent, Department of Labor and Industries, moved for partial reconsideration of, and moved to publish (together, the "motions"), the opinion filed on August 7, 2023. No opposition was filed.

A panel of the court has determined that respondent's motions should be granted, the original opinion should be withdrawn, and a substitute published opinion be filed.

Now, therefore, it is hereby

ORDERED that the Respondent's motions are granted; and it is further

ORDERED that the opinion filed on August 7, 2023, is withdrawn; and it is further

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84561-6-I/2

ORDERED that a substitute published opinion be filed.

Díaz, J.

Birk, J.

Bowman, J

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FRANK DEYOUNG,<br><br>     Appellant,<br><br>   v.<br><br>THE CITY OF MOUNT VERNON;<br>and THE DEPARTMENT OF LABOR<br>AND INDUSTRIES,<br><br>     Respondents. | No. 84561-6-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DíAZ, J. — Frank DeYoung appeals the Department of Labor and Industries's decision to deny his application for occupational disease benefits. DeYoung asserts that the 2018 amendments to the Industrial Insurance Act, which permit firefighters to file claims for posttraumatic stress disorder, apply retroactively to allow his claim, which manifested before the amendments became effective. We agree with the Board of Industrial Appeals that the 2018 amendments apply prospectively only and hold that DeYoung's claim is not viable under the applicable law. Accordingly, we affirm.

## I.  BACKGROUND

DeYoung was employed as a firefighter for the City of Mount Vernon from August 2005 until November 2017. It is undisputed that, prior to June 2018,

DeYoung developed and showed symptoms of posttraumatic stress disorder (PTSD) as the result of the traumatic events he witnessed as a firefighter.

In 2018, the legislature amended RCW 51.08.142 and RCW 51.32.185, both part of the Industrial Insurance Act (the Act). Previously where mental conditions and mental disabilities caused by stress were excluded from the definition of "occupational disease," these amendments now created an exception applicable solely to firefighters and law enforcement officers permitting claims resulting from PTSD. LAWS OF 2018, ch. 264 § 2. These amendments went into effect on June 7, 2018. LAWS OF 2018, ch. 264.

DeYoung filed an application for occupational disease benefits on August 21, 2019. On October 4, 2019, the Department of Labor and Industries (the Department) issued a Notice of Decision initially allowing DeYoung's claim. Two weeks later, on October 17, 2019, the Department canceled the October 4 decision. On October 24, 2019, the Department issued a decision rejecting DeYoung's claim for benefits, on the basis that PTSD is not an occupational disease pursuant to Former RCW 51.08.140. Upon reconsideration, the Department reaffirmed the rejection, finding that the amendments to RCW 51.32.185 were not retroactive.

DeYoung appealed to the Board of Industrial Insurance Appeals (BIIA). Both parties filed motions for summary judgment. The BIIA agreed with the Department, ruling that the statutory amendments were not retroactive. In so ruling, the BIIA held that the statutory amendments created a new right and were not remedial "because it does not relate to a practice, procedure or remedy." It

2

therefore granted the Department's motion for summary judgment, denied DeYoung's motion, and affirmed the Department's order rejecting DeYoung's claim for occupational disease benefits. DeYoung then appealed to the Skagit County Superior Court, which affirmed the decision of the BIIA.

DeYoung appeals.

## II. ANALYSIS

DeYoung's entitlement to benefits depends primarily upon whether the 2018 amendments to RCW 51.08.142 and RCW 51.32.185 operate retroactively.[1] This is a pure question of law, which we review de novo. Weber v. State, Dep't of Corr., 78 Wn. App. 607, 609, 898 P.2d 345 (1995). We review the decision of the superior court rather than the Board's order, though "our review is based solely on the evidence and testimony presented to the Board." Smith v. Dep't of Labor & Indus., 22 Wn. App. 2d 500, 506, 512 P.3d 566, review denied, 200 Wn.2d 1013, 519 P.3d 588 (2022) (citing RCW 51.52.115; Bennerstrom v. Dep't of Lab. & Indus., 120 Wn. App. 853, 858, 86 P.3d 826 (2004)).

"Where a statute is within the agency's special expertise, the agency's interpretation is accorded great weight, provided that the statute is ambiguous." Postema v. Pollution Control Hr'gs Bd., 142 Wn.2d 68, 77, 11 P.3d 726 (2000) (citations omitted). "Ultimately," however, "it is for the court to determine the

---

[1] As will be discussed below, DeYoung also argues that this court should not apply the "manifestation date" standard from an industrial injury to occupational injuries, such a PTSD, and argues that "Act is inherently remedial and that all amendments have retroactive effect unless otherwise specified." However, both of these arguments, as DeYoung implicitly recognizes, are issues of pure law and secondary to a retroactivity analysis and will be analyzed as such.

No. 84561-6-I/4

meaning and purpose of a statute." Postema, 142 Wn.2d at 77 (citing City of Redmond v. Central Puget Sound Growth Mgt. Hr'gs Bd., 136 Wn.2d 38, 46, 959 P.2d 1091 (1998).

In Washington, all workers are entitled to disability benefits under the Act, chapter 51 RCW, for occupational diseases. Occupational disease is defined by statute as "such disease or infection as arises naturally and proximately out of employment under the mandatory or elective adoption provisions of this title." RCW 51.08.140. The exception to this rule is found in RCW 51.08.142.

Prior to 2018, RCW 51.08.142 stated, "The department shall adopt a rule pursuant to chapter 34.05 RCW that claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of occupational disease in RCW 51.08.140." In 2018, the legislature amended this statute to add a second subsection to exempt, among others, firefighters from the rule barring claims based on mental conditions.

The amendment reads, in relevant part, as follows:

Except as provided in (b) and (c) of this subsection, the rule adopted under subsection (1) of this section shall not apply to occupational disease claims resulting from posttraumatic stress disorders of firefighters as defined in RCW 41.26.030(17) (a), (b), (c), and (h) and firefighters, including supervisors, employed on a full-time, fully compensated basis as a firefighter of a private sector employer's fire department that includes over fifty such firefighters . . .

RCW 51.08.142(2)(a). In conjunction with this amendment, the legislature also added a prima facie presumption for firefighters "that posttraumatic stress disorder is an occupational disease under RCW 51.08.140." RCW 51.32.185(1)(b).

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The parties in this matter dispute whether these amendments operate retroactively to apply to claims that accrued prior to the amended statutes's enactment.

"A statute is presumed to operate prospectively unless the legislature indicates that it is to operate retroactively." Agency Budget Corp. v. Washington Ins. Guar. Ass'n, 93 Wn.2d 416, 424, 610 P.2d 361 (1980) (citing Johnston v. Beneficial Management Corp., 85 Wn.2d 637, 641, 538 P.2d 510 (1975); Amburn v. Daly, 81 Wn.2d 241, 246, 501 P.2d 178 (1972)). "This presumption can only 'be overcome if (1) the Legislature explicitly provides for retroactivity, (2) the amendment is 'curative,' **OR** (3) the statute is 'remedial[.]'" Densley v. Dep't of Ret. Sys., 162 Wn.2d 210, 223, 173 P.3d 885 (2007) (internal citations omitted).

DeYoung contends that the third exception applies here, i.e., that the 2018 amendments to RCW 51.08.142 and 51.32.185 were remedial. As DeYoung notes, the Act "is remedial in nature," as it was designed to create a remedy for injured workers where none previously existed. Ma'ae v. Dep't of Labor & Indus., 8 Wn. App. 2d 189, 199, 438 P.3d 148 (2019). However, the fact that a statutory scheme is generally remedial in nature does not mean that all amendments to it are remedial for purposes of this retroactivity analysis. Rather, a statute is remedial if it "relates to practice, procedure, or remedies and does not affect a substantive or vested right." Miebach v. Colasurdo, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984) (citing Johnston, 85 Wn.2d at 641); see also Agency Budget Corp., 93 Wn.2d at 425.

5

The difference is perhaps best demonstrated by <u>Loeffelholz v. University of Washington</u>, 175 Wn.2d 264, 285 P.3d 854 (2012). In that case, an employee of the University of Washington filed a claim against her employer for discrimination on the basis of sexual orientation. In 2006, the legislature amended the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, to include sexual orientation as a protected class. LAWS OF 2006, ch. 4. Some of the incidents of discrimination that the employee listed in her complaint occurred prior to the effective date of the amendment, while only one had occurred after. <u>Loeffelholz</u>, 175 Wn.2d at 269.

The employee argued, as DeYoung does here, that the amendments to the WLAD were remedial because the WLAD is remedial in nature. <u>Id.</u> at 271. The Supreme Court rejected that argument. <u>Id.</u> The Court held that the statutory amendment was not remedial, and therefore not retroactive, based on both the plain language of the statute, which did not specify that it was to be applied retroactively, and on its legislative history. <u>Id.</u> at 271-72. Its legislative history indicated that the legislature recognized that it was creating a new cause of action, as the legislature had stated that "the amendment 'expanded [the WLAD] to prohibit discrimination based on a person's sexual orientation.'" <u>Id.</u> at 272 (quoting FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 2661, at 2, 59th Leg., Reg. Sess. (Wash. 2006)). Because amendments which create new causes of action are not considered remedial as they affect substantive rights, the court held that the amendments to the WLAD operated prospectively only and the employee could

6

only recover for the (single) incident that occurred after the statute's effective date. Id.

The amendments to RCW 51.08.142 and 51.32.185 function in much the same way as amendments to the WLAD do. Like the 2006 amendments to the WLAD, the 2018 amendments to the Act add a new category of people who can file a claim – firefighters with PTSD. Legislative history supports this reading, as the final bill report states that the amendments "[a]llow[] industrial insurance coverage for posttraumatic stress disorders affecting law enforcement officers and firefighters." FINAL B. REP. ON SUBSTITUTE S.B. 6214, at 1, 65th Leg., Reg. Sess. (Wash. 2018). These facts strongly suggest that the legislature amended the Act to create a new type of claim for a new kind of claimant, which had not existed.

In response, DeYoung asserts that the plain language of the statutes evinces the legislature's intent for the amendments to apply retroactively. Namely, DeYoung points to section (5) of RCW 51.32.185, which states that the presumption that PTSD is an occupational disease "applies to active or *former* firefighters." (emphasis added). Id. We disagree. Former firefighters are included among those who may file a claim for PTSD for the same reason they are included under subsection (3) among those who may file a claim for cancer: given the nature of the condition, it is possible that the condition will not manifest itself until after a firefighter has left their employment. The language is not indicative of retroactivity.

DeYoung also asserts that the requirement in RCW 51.32.185(5) that a firefighter must have served at least ten years before they are eligible to make a claim indicates the legislature's intent to apply the statute retroactively. According

7

to DeYoung, applying the statute prospectively would mean that no firefighter will be eligible to file a claim for occupational disease benefits for PTSD until 2028. Id. The plain language of the statute does not support such an interpretation. The statute establishes that only firefighters who have served the minimum number of years may file a claim for occupational disease benefits for PTSD. Nothing about the provision is indicative of retroactivity.

Nor does subsection (2)(b) of RCW 51.08.142, which makes a psychological examination, if offered by the employer, a prerequisite for claims filed by firefighters hired after the statute's effective date, evince an intent for the statute to apply retroactively. To the contrary, this provision evinces the precise opposite. By applying this provision only to those hired after the effective date, the legislature recognized that it would be inequitable to impose the same prerequisite on those currently employed firefighters whose PTSD manifested after June 2018. In other words, the legislature made the prerequisite applicable to only post-amendment hires precisely because it was altering the substantive rights of firefighters. As an alteration of substantive rights, the 2018 amendments cannot be remedial such that they would apply retroactively.

Alternatively, DeYoung asserts that it is the date of the filing of the claim for benefits, not the date of manifestation of the condition, that determines which version of the law controls. DeYoung attempts to distinguish a long line of cases holding otherwise by arguing that the date of manifestation rule applies only to the rate of compensation due to the employee, not whether the claim is allowable at all. Id. at 3-8.

Our Supreme Court has long ago stated otherwise: "It has been firmly established in this state, by a consistent series of decisions of this court, that the rights of claimants under the [Act][2] are controlled by the law in force at the time of the person's injury, rather than by a law which becomes effective subsequently."[3] Ashenbrenner v. Dep't of Labor & Indus., 62 Wn.2d 22, 25, 380 P.2d 730 (1963). And most devastatingly to DeYoung's claim is that the fact that, for occupational diseases such as PTSD, the "time of the person's injury" is considered to be the date at which the disease manifests. Dep't of Labor & Indus. v. Landon, 117 Wn.2d 122, 125-26, 814 P.2d 626 (1991).

Otherwise, DeYoung identifies no case where the law applied to a claim under the Act was the law in effect at the time that the claim was made, rather than when it accrued, and we presume none exists. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (holding where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found none) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).

---

[2] The Workmen's Compensation Act was re-codified as the Act in 1961. LAWS OF 1961, ch. 23.

[3] For this proposition, the Ashenbrenner court relied upon multiple cases holding that, for worker's compensation claims, the law in place at the time of injury is controlling. Not all of the cited cases concern the rate of compensation, contrary to DeYoung's claim otherwise. For example, Sheldon v. Department of Labor & Industries, 168 Wn. 571, 12 P.2d 751 (1932), concerned an amendment to the statute concerning what qualified as an "extra-hazardous" job. In another example, Bodine v. Department of Labor & Industries, 29 Wn.2d 879, 190 P.2d 89 (1948), concerned an amendment to the Worker's Compensation Act that granted the employee the right to recover attorney fees. Thus, despite DeYoung's assertion to the contrary, the history of the "manifestation rule" does not demonstrate that our Supreme Court intended the rule to apply only to the rate of compensation.

No. 84561-6-I/10

III.    CONCLUSION

We agree with the BIIA's interpretation that the amendments to RCW 51.08.142 and 51.32.185 only apply prospectively.  As such, the BIIA and the trial court did not err by denying DeYoung's request for occupational disease benefits and we affirm.

Díaz, J.

WE CONCUR:

Birk, J.                    Brunner, J